Isaac WELSH, Appellant,

v.

UNITED STATES of America, Appellee.

Alice C. WELSH, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 12205, 12206.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 15, 1954.

Decided Feb. 17, 1955.

5. See Smith v. United States, D.C.Cir. 1923, 53 App.D.C. 53, 288 F. 259; Walton v. United States, D.C.Cir.1953, 92 U.S.App.D.C. 26, 202 F.2d 18.

Mr. Curtis P. Mitchell, Washington, D. C., with whom Messrs. George E. C. Hayes and John A. Shorter, Jr., Washington, D. C., were on the brief, for appellants.

Mr. Harold H. Greene, Asst. U. S. Atty., Silver Spring, Md., with whom Messrs. Leo A. Rover, U. S. Atty., Lewis A. Carroll and E. Riley Casey, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

## WASHINGTON, Circuit Judge.

These cases raise the question whether the accused in a criminal case is entitled to the return of money illegally seized from him by the police of the District of Columbia, when it appears that the United States claims that the money is subject to a lien for taxes.

On July 1, 1953, pursuant to warrant, members of the Metropolitan Police Department searched premises of which the appellants were in possession. In addition to other property not here in question, they took money in the total amount of $2,205.89 from the premises, from the person of Isaac Welsh, and from his automobile.[1] Pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C., appellants filed a motion for return of all the property so obtained and to suppress it as evidence. On February 10, 1954, after hearing, the District Court denied the motion as to the other property but ordered that the money "which was illegally seized" be suppressed as evidence and that it be returned forthwith to appellants or to their attorney. The Government later moved to set aside this order on the ground that on August 13, 1953, the United States Treasury had "levied a tax lien and attachment in the amount of $20,000 on the money belonging to the defendants [appellants] which was then in the hands of the property clerk [of the Metropolitan Police Department]." On April 15, 1954, the District Court, after hearing, amended its order to direct that the $2,205.89 "be retained for the time being in its present custody, subject to the tax lien filed by the United States Treasury Department on, to wit, August 13, 1953 and the final disposition thereof." Appeal was taken from this amended order.

Appellants urge that the court should have ordered the money to be returned forthwith, notwithstanding that the property clerk, in whose possession it is, had—concededly—been served with a notice of a Federal tax lien dated August 10, 1953, against appellants for wagering tax, penalty and interest for the period May 29 through July 1, 1953, in the total amount of $20,340.38, together with a warrant for distraint dated August 12, 1953, and a notice of levy dated August 12, 1953, purporting to seize and levy upon the money of appellants in his possession.

■■ We consider first the argument that property in the custody of the law or illegally seized is not subject to the Federal tax lien. The lien in terms attaches to "all property and rights to property, whether real or personal" belonging to a delinquent taxpayer. 26 U.S.C. § 3670 (1952); Int.Rev.Code § 6321 (1954). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes," Glass City Bank v. United States, 1945, 326 U.S.

---

1. Appellants were later indicted, with others, under various counts charging them with conducting a lottery known as the numbers game. Each appellant has pleaded guilty to a count of the indictment and has been sentenced.

265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56.[2] The language unquestionably encompasses money belonging to a taxpayer, in whatever hands it may be. See 26 U.S. C. § 3672(b) (2) (1952); Int.Rev.Code § 6323(c) (2) (1954). Congress has not specifically excepted from the lien property in the possession of the police, or, as appellants term it, money *in custodia legis*, and we think that we may not write such an exception into the statute in the situation here.

This conclusion is buttressed by Farley v. Manning, 1950, 4 N.J. 571, 73 A.2d 551, 553, and United States v. Willmann, D.C.E.D.Mo.1945, 63 F.Supp. 535, in both of which it was specifically held that the Federal tax lien does attach to money seized in circumstances approximating those here and held, respectively, by a county treasurer and a sheriff. Cf. United States v. City of New York, 2 Cir., 1936, 82 F.2d 242. It is true, as appellants point out, that in these cases there was no specific ruling that the money had originally been seized illegally. Such a ruling was, however, unnecessary to a resolution of the points presented there, and it is plain that the decisions are based on the sweeping nature of the lien provided by the statute and not on the validity or invalidity of the original seizure. The cases are clear authority against appellant's contention that money in the custody of officers of the law is not subject to the tax lien.[3]

 Appellants also contend that the Fourth Amendment would be violated if the Federal tax lien were permitted to attach to their money. That Amendment prohibits the violation of the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This right is primarily safeguarded by suppressing the evidence secured as a result of the violation when it is tendered in a Federal court. McDonald v. United States, 1948, 335 U.S. 451, 453, 69 S.Ct. 191, 93 L.Ed. 153. But here the money has been declared illegally seized and has been suppressed as evidence. To subject it to a tax lien does not result in using the money as evidence in any proceeding, criminal or civil. The money is being held as security for an asserted tax debt—not arising out of the illegal seizure or, so far as appears, out of information gained from the seized money—pending determination of the debt and lien in an appropriate proceeding. There is no guarantee in the Fourth Amendment that illegally seized property must be returned to the owner. For example, such property is not required to be returned to the owner when it is contraband or forfeitable. Trupiano v. United States, 1948, 334 U.S. 699, 710, 68 S.Ct. 1229, 92 L.Ed. 1663; United States v. Jeffers, 1951, 342 U.S. 48, 54, 72 S.Ct. 93, 96 L.Ed. 59, affirming, 1950, 88 U.S. App.D.C. 58, 187 F.2d 498. If no violation of the Fourth Amendment occurs in such a case, it must follow that no violation of that Amendment occurs if the return of appellants' money is delayed or prevented entirely by the recognition of a tax lien imposed by Congress.[4]

2. See also Blacklock v. United States, 1908, 208 U.S. 75, 85, 28 S.Ct. 228, 52 L.Ed. 396, where the lien is characterized as a "sweeping" lien upon all property or rights to property; Citizens State Bank of Barstow, Texas v. Vidal, 10 Cir., 1940, 114 F.2d 380, 382-383.

3. In this connection it is to be noted that Section 15-306 of the D.C.Code (1951), provides that a judgment creditor may levy an attachment upon money of the defendant in the hands of the marshal or coroner. Mercantile Trust Co. v. Hofferbert, D.C.D.Md.1944, 58 F.Supp. 701, 706, also has some pertinence here. There

the court declined to quash notices of Federal tax lien and levy and warrants of distraint on income of a spendthrift-trust even though the trustee could not turn over the income without a court order and contended the property was *in custodia legis*. United States v. Swink, D.C.E.D. Va.1941, 41 F.Supp. 98, and The Victory, 1863, 28 Fed.Cas. page 1183, 1184-1185 No. 16,938, relied upon by appellants, involved very different factual situations from the present one and are inapplicable.

4. Appellants urge that the lien could not have been enforced against the money, if

This is all the more plain since if the money had not been taken from appellants, it as their property in their possession would have been subject to the lien under the broad terms of the statute. 26 U.S.C. §§ 3670, 3671 (1952); Int.Rev. Code §§ 6321, 6322 (1954). Whether seized or not, the lien would attach: they are afforded an equal opportunity in either case under the revenue laws of testing their liability for the tax and resultant right to the money in appropriate proceedings. Cf. Dodge v. United States, 1926, 272 U.S. 530, 532, 47 S.Ct. 191, 71 L.Ed. 392. There is no suggestion that the police seized the money from the appellants with the purpose of aiding the tax collector, or that the latter had instigated the seizure for a like purpose. If such a case arises, there will be time enough to deal with it.

Appellants' second contention is that the District Court had no jurisdiction in the hearing under Rule 41(e) to "adjudicate" the lien. Such a contention, even if well taken, has little relevancy here. Congress has provided in the internal revenue laws the various ways in which the United States may take property to enforce its lien, or in which taxpayers may obtain release of the lien if the tax assessed against them is not due or the lien is otherwise invalid. See e. g., 26 U.S.C. §§ 3673, 3678, 3690, 3692 (1952); Int.Rev.Code §§ 6325, 7403 6331, 6334 (1954); 28 U.S.C. § 2410 (1952). A criminal proceeding of the present sort is not one of those designated for enforcement or release of a lien. But it is clear that the District Court did not here undertake to decide that the claimed tax lien was a valid and enforce-able one. The terms of the order merely recognize that a lien had been "filed" against the money on a certain day and that the lien will be finally disposed of elsewhere.

■■ Rule 41(e), Federal Rules of Criminal Procedure, provides that if a motion for return of property and for its suppression as evidence is granted, the property shall be restored "unless otherwise subject to lawful detention." If the money, while in the possession of the property clerk, was subject to the assertion of the Federal tax lien, it was "subject to lawful detention" within the meaning of the rule. When a tax lien attaches to property, the United States has an interest in the property and becomes in a sense a co-owner of it to the extent of the lien. United States v. City of Greenville, 4 Cir., 1941, 118 F.2d 963, 965. Obviously, if the United States has acquired a property right in the money, the appellants do not have an undisputed right to it. The District Court properly ordered the money retained in its present custody, pending final disposition of the tax lien asserted against it, that is, until the paramount right to the money is determined. Cf. § 4–156, D.C.Code (1951). This is not to say, of course, that the United States has an enforceable lien, but only that a purported lien, on its face valid,[5] has been asserted, prima facie impairing the possessory rights of the appellants in the money.

Moreover, there are practical deterrents to entry of an order in this proceeding for immediate return of the money to appellants. If the property clerk complied with such an order, he might well be subjected to personal liability to

it had remained in appellants' actual possession, without violation of the Fourth Amendment. But the question here relates only to whether the lien reaches the money in its present custody, not to whether or how it might have been enforced.

5. The notice of lien states that the Director of Internal Revenue received the assessment list on August 10, 1953, showing an assessment against appellants in the amount of $20,340.38, and that after demand for payment it remains unpaid. Assuming the truth of these statements, a valid lien arose. 26 U.S.C. §§ 3670, 3671 (1952); Int.Rev.Code §§ 6321, 6322 (1954). There is nothing here to show that the tax assessed is not due, or that the lien is invalid, and as already noted this proceeding is not the one authorized by the statutes for determination of such questions.

the United States for the amount returned. 26 U.S.C. § 3710 (1952); Int. Rev.Code §§ 6332, 7343 (1954). Cf. United States v. City of New York, 2d Cir., 1936, 82 F.2d 242; Determan v. Jenkins, D.C.N.D.Ga.1953, 111 F.Supp. 604. The courts should be reluctant to enter an order with such possible consequences when appellants' statutory remedies are clear.

For these reasons, and in the light of the circumstances presented, we approve the District Court's amended order, and direct that it be

Affirmed.