**Emilio PIZZARELLO, Plaintiff,**

v.

**UNITED STATES of America, Edward J. Fitzgerald, Jr., District Director of Internal Revenue for the District of Manhattan, Sheldon Cohen, Commissioner of Internal Revenue of the United States of America, Defendants.**

No. 68 Civ. 1883.

United States District Court
S. D. New York.
May 31, 1968.

---

James G. Starkey, Brooklyn, N. Y., for plaintiff.

Robert M. Morgenthau, U. S. Atty., for defendants; Martin Paul Solomon, Asst. U. S. Atty., of counsel.

WYATT, District Judge,

This is a motion by plaintiff (Emilio) for a preliminary injunction (Fed.R.Civ. P. 65) restraining defendants from levying (26 U.S.C. § 6331(a)) to satisfy an assessment of taxes against Emilio made by the Internal Revenue Service (the Service) on April 25, 1968. The action is in substance for the same relief permanently.

Emilio is the proprietor of a stationery store and luncheonette located at 151 West Sanford Boulevard, Mount Vernon, New York.

On April 15, 1965, Emilio was arrested in the back room of his store by special agents of the Service who had an arrest warrant issued on a complaint of violation of federal wagering tax laws. A search of Emilio conducted incident to his arrest disclosed $425 in currency on his person and some betting slips. Some three hours later, the agents caused a safe in the storage room of Emilio's store to be opened; currency in the amount of $123,017 was found and seized. Other currency in the sum of $2,440 was at about the same time seized from other locations in the storage room, along with three bundles of bets wrapped up in racing forms. The total of the money seized on April 15 was thus $125,882.

On July 9, 1965, the government filed a libel of information (65 Ad. 704) to forfeit (26 U.S.C. § 7302) the $125,882 in currency seized on April 15. In due course Emilio filed a claim to the money as its owner.

When property is seized by revenue officers and is "forfeitable", it may, at the option of the Service, be put in the "custody and *control*" of the Marshal, that is, in advance of the filing of a libel (26 U.S.C. § 7322; emphasis supplied). In this instance, the property was not put in the custody and control of the Marshal before filing the libel.

■ Forfeiture is by "a proceeding in rem" (26 U.S.C. § 7323) and where the Court does not already have the property, jurisdiction is obtained by securing its possession in the Court so that control over the property may be exercised and the Court's decree made effective.

When the libel was filed against the currency seized from Emilio, a writ of attachment duly issued. The currency, then in the physical possession of the Service at 90 Church Street, was on July 14, 1965 attached and taken under control of the Marshal by proper service of the writ on the appropriate representative ("property coordinator") of the Service. Physical possession was not then changed but from that date the property has nevertheless been in the custody of the Court (and on May 29, 1968, I directed the Marshal to take the property into his physical possession).

An information (65 Cr. 729) was filed on August 19, 1965 charging Emilio in two counts with violations of the federal wagering tax laws (26 U.S.C. §§ 4401, 4411 and related sections). Emilio pleaded not guilty.

■ Emilio moved under Fed.R.Crim. P. 41(e) for the return of the money seized and for its suppression for use as evidence. He successfully contended before Judge Murphy that the arrest warrant was invalid but Judge Murphy sustained the arrest as one by a private citizen who saw Emilio commit a misdemeanor in his presence (accepting wagers illegally); such an arrest is valid under New York law (United States v. Viale, 312 F.2d 595 (2d Cir.), cert. denied 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963)). Since the $425 in currency and "ten betting slips" were taken in a search incident to a lawful arrest, Judge Murphy would not suppress this property for use as evidence nor direct its return to Emilio. On the other hand, the currency seized three hours later (in total $125,457) and the bundle of

bets then taken were held to have been illegally seized because not incident to the arrest. The government contended that this property should not be ordered returned, however, because it was subject to forfeiture under 26 U.S.C. § 7302. Without passing on the merits of this contention Judge Murphy denied that part of Emilio's motion which sought the return of the $125,457 and the bundle of bets on condition that the government before November 1, 1965 file a libel for its forfeiture (Judge Murphy was evidently not aware that a libel had already been filed). The order with opinion of Judge Murphy was filed October 25, 1965.

A motion for Emilio for summary judgment in the forfeiture case was denied by Judge (now Chief Judge) Sugarman by order with opinion filed March 22, 1966. Chief Judge Sugarman ruled that under One 1958 Plymouth, etc. v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) a forfeiture could not be supported *solely* by illegally seized evidence but that there had to be a trial of Emilio's case because "independent" and untainted evidence was available. The motion before Judge Sugarman was for summary judgment "in favor of the claimant" but the moving affidavit made it clear that the motion was for partial summary judgment because it did not include the $425 and "ten betting slips" taken from Emilio's person.

The trial of the information in the criminal case was before Judge Frankel and a Jury. There was a verdict of guilty on both counts (but "without wilful intent", thus excluding a violation of 26 U.S.C. § 7203) and judgment of conviction was entered on May 10, 1966. The Court of Appeals affirmed on November 17, 1967 (2 Cir., 386 F.2d 177).

On January 29, 1968, the Supreme Court decided that the federal wagering tax laws could not be used to punish criminally those who (as did Emilio) defend their violations on Fifth Amendment grounds. Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889.

On March 4, the Supreme Court granted certiorari in Emilio's case, vacated the judgment and remanded, etc., Stone v. United States, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035.

On March 18, Emilio obtained an order requiring the government to show cause why there should not be summary judgment for him in the forfeiture case. This motion was heard by Judge Tyler on April 2.

A "Statement of tax due" dated April 26, 1968, on "Form 17–A" was then sent by the Service to Emilio. This shows an "assessment" of $282,440.70 on April 25, 1968 as "additional Federal tax due, based on an audit of your tax return for the period shown". The "period" may be deciphered as "4/1/60 to 4/14/65". It is stated that the amount assessed "should be paid" within ten days. Presumably this Form 17–A is the "notice and demand" (after assessment) referred to in 26 U.S.C. § 6861(a) and § 6862(a)).

It cannot be determined from Form 17–A what kind of tax has been assessed but the taxpayer on "request" may secure certain information (26 U.S.C. § 6203), including the "character of the liability assessed" (Treas.Reg. § 301.-6203–1). It does not appear that Emilio has made any such "request".

An affidavit (sworn to May 14, 1968) is submitted of the District Director of Internal Revenue, who on April 25, 1968, personally approved a "jeopardy assessment" against Emilio of $282,440.70 under 28 U.S.C. § 6862(a). The assessment is stated to be for excise taxes under 26 U.S.C. § 4401. The District Director explains that incident to the arrest on April 15, 1965, "records" were seized which showed the wagers accepted by Emilio on April 12, 13, and 14, 1965; that the average of wagers accepted on those days was multiplied by the number of days (excluding Sundays) between April 1, 1960 and April 14, 1965; and that this resultant figure was $2,824,407.

The 10% tax on this amount under 26 U.S.C. § 4401 is the amount of the assessment.

On May 8, Judge Tyler filed an'opinion holding that the government had no legal claim to the $125,882 in currency and that this property must be turned over to Emilio. No order has yet been entered on Judge Tyler's decision and a motion for reargument made by the government is returnable on June 4.

The case at bar was commenced on May 8, the date of the filing of Judge Tyler's opinion in the forfeiture case.

The complaint avers a scheme by defendants unlawfully to deprive Emilio of the seized money by assessment of taxes without "lawful or sufficient evidence" for such assessment and by seizure of the money under the assessment before delivery can be made to Emilio under an order of this Court in the forfeiture case. It is averred that the object of the assessment is to "relegate plaintiff to a suit for refund" in which the burden of proof would be "hopelessly inconsistent" with the self-incrimination privilege and that thus defendants would by assessment "indirectly" forfeit the money when they could not accomplish the forfeiture "lawfully" in the forfeiture case.

On May 22, an amended complaint was filed (Fed.R.Civ.P. 15(a)). The amendment adds an averment of the decision of Judge Tyler, adds averments that Emilio cannot pay the assessment and that unless he has an injunction he will lose the money and also other property (such as a house), and adds an averment that if certain statutes— 26 U.S.C. §§ 6201, 6301, 6321, 6331 and 6862—authorize the April 25, 1968 assessment, then they are unconstitutional.

The relief demanded in the amended complaint is principally and in substance that defendants be enjoined from collection of the tax assessed and especially that they be enjoined from levy (26 U.S.C. § 6331) on the currency in the

Court's custody and that the assessment "be declared null and void".

On May 22, 1968, the Court of Appeals remanded Emilio's criminal case to this Court with direction that a judgment of acquittal be entered.

The obstacle which bars the maintenance of this action and which requires denial of the present motion is the statute, on the books in substantially the same form since at least 1867 and now 26 U.S.C. § 7421(a). That section, omitting exceptions not here relevant, reads as follows:

"* * * no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

On its face the statute bars any relief here. On facts very similar to those in the case at bar, it has been held in a careful opinion that no injunction may issue. Lassoff v. Gray, 207 F.Supp. 843 (W.D.Ky.1962).

The only time when an injunction against collection of a tax may be issued, despite Section 7421(a), is where a plaintiff shows (a) that collection would cause irreparable injury and (b) that "it is clear that under no circumstances could the Government ultimately prevail". Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). As to the second requirement it amounts to a showing of bad faith on the part of the government (370 U.S. at 7).

With respect to irreparable harm, if the tax as assessed is collected, Emilio may bring an action in a District Court for a refund. 28 U.S.C. § 1346(a) (1). His affidavit states that he "cannot pay the assessment" but this is of no moment because the "full payment" principle in respect of income taxes (Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1962)) does not appear to be applicable to excise taxes which "may be divisible into a tax on each transaction or event, so that

the full-payment rule would probably require no more than payment of a small amount" (Flora v. United States, above, at 175 n. 38, 80 S.Ct. at 646). See also Vuin v. Burton, 327 F.2d 967 (6th Cir. 1964), a wagering tax case very similar to that at bar. The affidavit of Emilio also states that if levy is permitted under the assessment, he will be "personally ruined and ruined in my business". This is much too general and conclusory to establish any irreparable injury. The primary object of the present motion is to prevent levy on the $125,882 in currency. Emilio has been without this sum since April 15, 1965; surely it cannot be any irreparable injury, after levy on the currency, to bring the normal action for a refund.

But Emilio fails moreover to establish that "under no circumstances could the Government ultimately prevail" (370 U.S. at 7, 82 S.Ct. at 1129).

■ The assessment is presumptively valid and the burden is on Emilio, no matter in what type of proceeding, to show that it is invalid. Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935); United States v. Rindskopf, 105 U.S. 418, 422, 26 L.Ed. 1131 (1881).

■ The tax on wagers in 26 U.S.C. § 4401 has been held to be constitutional. Marchetti v. United States, 88 S.Ct. at 700, 708 (1968).

■ A contention here is that assessment and levy "without notice and hearing" violates the due process clause. Such a contention was long ago rejected by Mr. Justice Brandeis, speaking for a unanimous Court, in Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 595–597, 51 S.Ct. 608, 611, 75 L.Ed. 738 (1931):

"The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. * * * Property rights must yield provisionally to governmental need. Thus, while protection of life and liberty from administrative action alleged to be illegal may be obtained promptly by the writ of habeas corpus, * * * the statutory prohibition of any 'suit for the purpose of restraining the assessment or collection of any tax' postpones redress for the alleged invasion of property rights if the exaction is made under color of their offices by revenue officers charged with the general authority to assess and collect the revenue. * * *

"Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate."

Another contention appears to be that the assessment is plainly illegal because based on evidence illegally seized. In point of fact, this does not appear to be established. It will be remembered that Judge Murphy found that "ten betting slips" and $425 in currency were legally seized from Emilio's person. It may well be that the assessment was based wholly or in large part on this evidence. The affidavit of the District Director is not entirely clear; he says that the computation was based on "records seized during a search of the premises incident to [Emilio's] arrest." This points to some extent to the later seizures but the words may not have been carefully chosen with the present point in mind and in any event the burden is on Emilio to show the assessment invalid. In point of law, there is even greater doubt. It is by no means clear that evidence illegally seized and inadmissible in a criminal proceeding (Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)) or in a forfeiture (a quasi criminal) proceeding (One 1958 Plymouth, etc. v. Commonwealth of Pennsylvania, above) is

also inadmissible in a federal tax proceeding, much less barred for use as the basis for an assessment. The views of lower courts appear to be divided in respect of civil proceedings. Compton v. United States, 334 F.2d 212, 217 n. 11 (4th Cir. 1964). The decision in United States v. Physic, 175 F.2d 338 (2d Cir. 1949), cited in the footnote in *Compton,* was in a forfeiture case. The Supreme Court has apparently never decided the point. That the answer is at least doubtful is seen from the reason given for the One 1958 Plymouth, etc. decision, namely, that forfeiture proceedings while civil in form are in substance criminal and that this "nature of a forfeiture proceeding" leads to the conclusion that the exclusionary rule is applicable in such proceedings (380 U.S. at 702, also 697, 85 S.Ct. 1246).

■ In any event, a suit for an injunction is not the proper way to question the use of illegally seized evidence as the basis of a tax assessment. Zamaroni v. Philpott, 346 F.2d 365 (7th Cir. 1965).

■ Another contention appears to be that because the existence of the property was discovered by an illegal seizure, then there may be no levy on the property under a jeopardy assessment. This contention is without merit. In a case in the Fifth Circuit very similar to the case at bar, the contention was rejected in a well reasoned opinion of Judge John R. Brown. Field v. United States, 263 F.2d 758 (5 Cir. 1959) cert. denied 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959).

Further discussion of contentions for Emilio seems unnecessary.

It is *not* "clear that under no circumstances could the Government ultimately prevail" (370 U.S. at 7, 82 S.Ct. at 1129).

It is *not* "apparent that, under the most liberal view of the law and the facts, the United States cannot establish its claim" (370 U.S. at 1, 82 S.Ct. at 1129).

Where Section 7421(a) is applicable, as here, the *Enochs* opinion states that this Court is "without jurisdiction" (370 U.S. at 7, 82 S.Ct. 1125). See also Zamaroni v. Philpott, above.

The findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a) are contained in what has been written above.

The motion for a preliminary injunction is denied.

The Clerk is directed to enter judgment dismissing the action for lack of jurisdiction of the subject matter (Fed. R.Civ.P. 12(h) (3)).

To permit plaintiff an opportunity to apply to the Court of Appeals for a stay pending any appeal from this order, defendants are stayed until June 11, 1968 from making any levy in respect of the taxes assessed against plaintiff on April 25, 1968.

So ordered.