Michael **YANNICELLI**, Plaintiff,

v.

**Roland H. NASH, Jr., District Director of Internal Revenue for the State of New Jersey, Defendant.**

**Civ. A. No. 1253–71.**

United States District Court, D. New Jersey.

Oct. 31, 1972.

Supplemental Opinion Jan. 24, 1973.

---

Bracken, Walsh & Craig, by Joseph F. Walsh, Newark, N. J., for plaintiff.

John N. Mitchell, U. S. Atty. Gen., by Andrew F. Oehman, Atty. Dept. of Justice, Washington, D. C., Herbert J. Stern, U. S. Atty., by William J. Hunt, Asst. U. S. Atty., Newark, N. J., for defendant.

## OPINION

COOLAHAN, Chief Judge:

The plaintiff in this action, Michael Yannicelli, seeks to suppress a jeopardy assessment lien and levy for unpaid gambling taxes placed upon money illegally seized by the United States. The suit raises several significant issues of law concerning the Internal Revenue Service (IRS) and its jeopardy assessment procedures.

## STATEMENT OF FACTS

On June 9, 1971 Michael Yannicelli was arrested by United States Marshals at Newark Airport on charges of assaulting a federal officer, 18 U.S.C.A. § 111, and traveling in interstate commerce with intent to distribute gambling proceeds, 18 U.S.C.A. § 1952. Contemporaneous with the arrest, the Marshals seized $58,930 discovered within Yannicelli's suitcase. On July 6, 1971 the District Director of the Manhattan District of the IRS made a jeopardy assessment, pursuant to Section 6861 of the Internal Revenue Code of 1954 (I.R.C.), against Yannicelli for unpaid federal income taxes for the year 1969. On the same day the IRS District Director for the State of New Jersey served a Notice of Levy on the United States Marshal, Newark, New Jersey, then in possession of Yannicelli's money, in the amount of $58,930.

Sometime after August 25, 1971 Yannicelli received a letter from the IRS dated August 18, 1971. This "deficiency notice" stated that the IRS had deter-

mined that Yannicelli had realized unreported additional taxable income from "gambling operations" in 1969 in the amount of $90,800.[1] It also informed him that a "jeopardy assessment" had been made against him to the extent of $58,930, and that he could contest this determination by filing a petition within 90 days with the Tax Court.

On August 25, 1971, prior to receiving the formal tax deficiency and jeopardy assessment notice, Yannicelli filed a complaint in this Court to set aside the July 6th tax lien and levy.

During this period a criminal action was brought before this Court involving Yannicelli, United States v. Michael Yannicelli, Criminal No. 469–71. In the course of the criminal proceeding a motion was made to suppress evidence and was granted under Rule 41(e) of the Federal Rules of Criminal Procedure (F.R.C.P.). On October 8, 1971 this Court directed that all of the items illegally seized from Yannicelli on June 9, 1971 be returned to him, with the exception of the cash so seized, on which a tax lien had been placed by the United States.

Yannicelli now brings a civil action before this Court for the release and return of his money, claiming that the jeopardy assessment lien and levy was an "illegal forfeiture" in violation of his Fourth and Fifth Amendment rights.

Plaintiff has also filed a suit in the United States Tax Court seeking a refund and redetermination of the 1969 deficiency assessment. That suit is presently awaiting trial.

## JURISDICTION

### I

Plaintiff's suit poses several intricate jurisdictional, statutory, and constitutional questions. The first issue to be considered is whether the pending action in the Tax Court entirely deprives this Court of jurisdiction.

■ Normally a taxpayer may petition the Tax Court for a redetermination of a deficiency after notice of the deficiency is given. This stays collection of the tax until the decision of the Tax Court becomes final. If the collection is undertaken earlier, it may be enjoined by a proceeding in the proper court. I.R.C. § 6213(a). However, the statutory restriction upon collection of the tax does not apply to jeopardy assessments, which may not be stayed unless a bond is filed. I.R.C. § 6863(a); United States v. Clinton, 232 F.Supp. 957 (D.C.N.Y.1964). The record before the Court does not indicate that the plaintiff has filed a stay bond. Neither does the record indicate that plaintiff has sought an administrative abatement of the jeopardy assessment.[2]

■ In general, once a taxpayer seeks relief in the Tax Court he may not bring suit in any court for the recovery of any part of the tax, except to enforce a final decision of the Tax Court. I.R.C. § 6512(a). Consequently, any decision concerning plaintiff's ultimate federal tax liability status for 1969 is an issue properly within the jurisdiction of the Tax Court to decide. However, the plaintiff in this action does not bring an

---

I. The IRS listed Yannicelli's total federal tax liability for 1969 at $64,119, of which only $4,126 had been paid, indicating a deficiency of $59,993 along with additional penalties in the amount of $8,999. I.R.C. § 6651(a)(1), (2), (3) apply fixed percentage penalties for failure to file an income tax return and pay the amount due without reasonable cause.

2. I.R.C. § 6861(c): "The Secretary or his delegate may, at any time before the decision of the Tax Court is rendered, abate such [jeopardy] assessment, or any unpaid portion thereof to the extent that he believes the assessment to be excessive in amount. The Secretary or his delegate shall notify the Tax Court of the amount of such assessment, or abatement, if the petition is filed with the Tax Court before the making of the assessment or is subsequently filed, and the Tax Court shall have jurisdiction to redetermine the entire amount of the deficiency and of all amounts assessed at the same time in connection therewith."

ordinary tax refund suit before the Court, nor does he question the tax deficiency assessment as such. In limiting his challenge to the legality of the method in which a jeopardy assessment was enforced against him, in alleged violation of his Fourth and Fifth Amendment rights, the Court feels that it is not precluded by the pending Tax Court action from reviewing this issue.

## II

■■ As a general rule suits involving federal taxes must be maintained against the United States, and not against individual Government employees who have no personal liability or interest regarding the federal tax revenues. Yet plaintiff's complaint names Roland H. Nash, Jr., IRS District Director for the State of New Jersey, as defendant in this action. In determining whether the United States is the proper party defendant in this action the Court is obliged to consider "the issues presented and the effect of the judgment which can be entered in response to those issues." Jones v. Tower Production Co., 138 F.2d 675, 677 (10 Cir. 1943).

■ The plaintiff claims that the IRS District Director in New Jersey placed an unlawful tax lien and levy on his money. (The IRS District Director in Manhattan made the actual jeopardy assessment determination). However, the money in question has for all intents and purposes become part of the United States Treasury. Since a judgment in plaintiff's favor would directly affect the interests of the United States, the United States should have been designated the party defendant in this action. The courts have consistently held that the United States is an indispensable party to any action to remove or cancel an income tax lien. Jones v. Tower Production Co., *supra*; Seff v. Machiz, 246 F.Supp. 823 (D.Md.1965); Czieslik v. Burnet, 57 F.2d 715 (E.D.N.Y.1932).

■ Nevertheless, under the liberal spirit of the Federal Rules of Civil Procedure, the Court does not feel that plaintiff's failure to properly designate the United States as the party defendant in this action is fatal to the complaint. The Court will view the action as being directed against the United States, and will regard IRS District Director Nash as only the nominal party of record.

## III

■ Under the rule of sovereign immunity, a suit against the United States is barred unless the United States specifically waives its immunity by statute and consents to be sued. Larson v. Foreign Domestic Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Moore Ice Cream Co. v. Rose, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265 (1932). Consequently, this Court can hear plaintiff's action only if there is an appropriate federal statute indicating a waiver of sovereign immunity and conferring the necessary subject matter jurisdiction.

■ Under 28 U.S.C.A. § 1340 the District Courts have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue. Although the statute is only a grant of general jurisdiction, and not a waiver by the United States of its sovereign immunity, it does authorize proceedings in which the United States waives its immunity under some other statutory provision(s). Quinn v. Hook, 231 F.Supp. 718 (D.C.Pa.1964), aff'd., 341 F.2d 920 (3 Cir. 1965); Broadwell v. United States, 234 F.Supp. 17 (D.C. N.C.1964), aff'd., 343 F.2d 470 (4 Cir. 1965), cert. denied, 382 U.S. 825, 86 S. Ct. 57, 15 L.Ed.2d 70 (1965).

■ Since the plaintiff attacks the legality of the tax collection process, his suit would initially appear to invoke the provisions of 28 U.S.C.A. § 1346(a)(1). Under this statute the District Courts have original jurisdiction, concurrent with the Court of Claims, over "Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or ille-

gally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws. . . ." However, before a taxpayer can sue the Government under § 1346 he must first comply with several procedural prerequisites.

■ I.R.C. § 7422(a) provides that "No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate." The record before the Court does not indicate that the plaintiff has filed an administrative claim for refund (Form # 843). The taxpayer has the burden of proving that the refund claim has been timely filed. United States v. Rochelle, 363 F.2d 225 (5 Cir. 1966); 10 Mertens, Federal Income Taxation, § 58A.06 (1964 ed.). The fact that the plaintiff in this suit has filed a claim for a refund and redetermination of the deficiency assessment with the Tax Court, under I.R.C. § 6213, does not satisfy the requirement of I.R.C. § 7422(a) of filing an administrative refund claim prior to a judicial suit for the return of money seized by levy. Mulcahy v. United States, 388 F.2d 300 (5 Cir. 1968).

■ Another prerequisite of § 1346 is that full payment of an income tax assessment is a jurisdictional condition precedent to maintenance of most refund suits in the District Courts. Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1959). The record before the Court does not indicate that full payment has been made by the plaintiff.[3]

The defendant argues that since no claim for refund has been filed, and since the consent of the United States to be sued for a refund of taxes is conditioned upon strict compliance with the provisions of I.R.C. § 7422(a), this Court has no jurisdiction to hear this suit.

■ Plaintiff answers this jurisdictional objection by contending that his action is not a tax refund suit brought under § 1346(a) and § 7422(a). Instead his suit is brought under 28 U.S.C.A. § 2410(a) to have a Government tax lien declared invalid. Under § 2410(a) the United States may be named a party in any civil action or suit in any District Court "to quiet title to or to foreclose a mortgage or other lien upon . . . real or personal property on which the United States has or claims a mortgage or other lien." The Court notes that § 2410 is part of the Judicial Code and not part of the I.R.C., and that the statute does not deal exclusively with tax liens, but with any and all liens in favor of the United States. Nevertheless, the Court feels that § 2410 provides a sufficient jurisdictional base to prevent a summary dismissal of plaintiff's action.

■ In an ordinary refund suit plaintiff's failure to exhaust his administrative remedies [stay bond § 6863(a), abatement § 6861(g), refund claim § 7422(a)] would probably prevent judicial review. Yet the Court feels that such a failure is not fatal to bringing a suit under § 2410 to challenge the validity of a jeopardy assessment lien and levy procedure.[4]

The proper interpretation of § 2410 in relation to the sovereign immunity doctrine has been the subject of lively judicial debate. Quinn v. Hook, supra; Falik v. United States, 343 F.2d 38 (2 Cir. 1965); Broadwell v. United States, supra; Cooper Agency, Inc. v. McLeod,

---

3. Yannicelli was notified that his 1969 income tax deficiency was $59,993. The IRS levied upon $58,930. There apparently remains an outstanding deficiency of $1,063 along with $8,999 in penalties.

4. There is no indication that the IRS has been prejudiced in the preparation of the case by the failure of the plaintiff to file an #843 Form. The other administrative remedies are not mandatory prior to bringing suit.

235 F.Supp. 276 (E.D.S.C.1964) aff'd. 348 F.2d 919 (4 Cir. 1965); Remis v. United States, 172 F.Supp. 732 (D. Mass.1959), aff'd., 273 F.2d 293 (1 Cir. 1960). The Third Circuit, in conformity with the weight of authority on the issue, adheres to the view that the Government waives its sovereign immunity under § 2410 in those suits which seek to determine the relative position of a Government lien on property as against other lienors, and those suits which question the validity of a lien in reference to compliance or noncompliance with statutory and constitutional requirements of due process. Quinn v. Hook, *supra.* In cases where a tax lien is involved, sovereign immunity is waived and subject matter jurisdiction conferred on the Court, provided that the plaintiff refrains from collaterally attacking the merits of the Government's tax assessment itself. Quinn v. Hook, *supra*; Falik v. United States, *supra.*

██ Since the plaintiff in this action questions only the legality of the procedure used to enforce a jeopardy assessment, and not the validity of the jeopardy assessment itself, the suit falls within the proper jurisdictional scope of § 2410.

### IV

The Government next raises the objection that regardless of § 2410 the Court still lacks subject matter jurisdiction in light of certain historic statutory prohibitions against injunctions and declaratory relief in federal tax matters. 28 U.S.C.A. § 2201, I.R.C. § 7421.

██ The Declaratory Judgment Act, § 2201, prohibits declaratory relief "with respect to Federal taxes." The statute exemplifies the Congressional policy of guaranteeing the timely collection of the national revenues, free from undue litigation outside of the Tax Court. S.Rep.No.1240, 74th Cong., 1st Sess., p. 11 (1935). However, the plaintiff in this action is not seeking a premature judicial declaration concerning the merits of his federal tax assessment for 1969 and whether he does or does not owe the Government unpaid taxes. Plaintiff merely seeks a determination by this Court of the legality of the tax lien and levy independent from the merits of the deficiency assessment. The prohibition regarding Federal taxes within the Declaratory Judgment Act cannot be used to shield the IRS from judicial review of alleged constitutional violations resulting from the enforcement of IRS tax collection procedures.

██ I.R.C. § 7421 states that "Except as provided in sections 6212(a) and (c), 6213(a), and 7426(a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court. . . ." This provision does not prohibit any and all suits to restrain the assessment or collection of a tax. In Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 23, 76 L.Ed. 517 (1932), the Supreme Court held that such a suit may be maintained if the complainant shows the existence of special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity. Later, in Enochs v. Williams Packing and Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L. Ed.2d 292 (1962), the Court stated that the complainant must also demonstrate that under the most liberal view of the law and facts the United States cannot establish its tax claim.

██ Plaintiff's money has already been assessed and collected prior to this suit. Consequently, he seeks to show that the money was unlawfully obtained by the IRS. An examination on the merits is therefore needed for the Court to determine whether under the law and particular facts of the case the Government unlawfully obtained possession of the money in question. This Court has the power to order the return of any unlawfully held property under Rule 41(e), F.R.Crim.P., and under general principles of equity.

██ The courts have held that revenue collection proceedings are not im-

mune from judicial interference under I.R.C. § 7421(a), *if* these proceedings are exercised in excess of the statutory authority granted to the IRS and in violation of constitutional rights. United States v. Bonaguro, 294 F.Supp. 750 (E.D.N.Y.1968), aff'd, 428 F.2d 204 (2 Cir. 1969), cert. denied, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970). Transport Mfg. and Equipment Co. of Delaware v. Trainor, 382 F.2d 793 (8 Cir. 1967).

The Court feels that adequate subject matter jurisdiction exists in this action for a review of the substantive issues presented.

## MERITS

### V

In the prior criminal action before this Court involving the plaintiff, United States v. Yannicelli, *supra*, a motion to suppress evidence was granted under Rule 41(e), F.R.Crim.P. The Rule states that illegally seized property shall be restored "unless otherwise subject to lawful detention." Upon being informed that the IRS had in the interim placed a tax lien and levy upon plaintiff's money, while in the hands of the U.S. Marshal, the Court did not order its return. At that time the Court did not make a determination that the tax lien was enforceable, noting only that the Government asserted a purported tax lien which appeared valid on its face and which prima facie impaired plaintiff's immediate possessory rights to the money.

The civil action now before the Court squarely raises the issue of the enforceability of the tax lien and levy. The plaintiff argues that before a tax lien can validly attach the Government must adhere to the provisions of I.R.C. § 6321, requiring that a taxpayer first neglect or refuse to pay the tax deficiency after demand. The levy papers served on the U.S. Marshal holding the seized money contained a standard form reference: "You are further notified that demand has been made for the amount set forth herein upon the taxpayer who has neglected or refused to pay, and that such amount is still due, owing, and unpaid from this taxpayer." Yet plaintiff states that no such demand to pay was ever made, and consequently no refusal to pay was ever given prior to the lien and levy. The Government does not refute this statement. Plaintiff argues that the Government's failure in this regard constitutes a statutory violation amounting to a denial of due process of law, and thereby invalidates the tax lien and levy.

Under I.R.C. § 6212, if an IRS official determines that there is a deficiency in respect of any tax the official is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. I.R.C. § 3670 then provides that "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount, (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

■ Under ordinary circumstances timely demand is necessary to create a valid tax lien, and the demand must be more than a mere formal reference in the notice of tax lien and levy. Ruth v. Winifred, 150 F.Supp. 630 (D.C.Mass. 1957).

I.R.C. § 6331 details the *usual* tax lien and levy procedure: "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax." Yet the language of § 6331 contains a crucial distinction to the effect that if a finding is made "that the collection of such tax is in

jeopardy, notice and demand for immediate payment of such tax may be made . . . and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period. . . ."

The determination that a tax is "in jeopardy" falls under the provisions of I.R.C. §§ 6851 and 6861. Under § 6861(a) "If the Secretary or his delegate believes that the assessment or collection of a deficiency . . . will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency . . . and notice and demand shall be made by the Secretary or his delegate for the payment thereof." This provision concerning notice and demand is further qualified by § 6861(b) which provides that "If the jeopardy assessment is made before any notice in respect of the tax to which the jeopardy assessment relates has been mailed under section 6212(a), then the Secretary or his delegate shall mail a notice under such subsection within 60 days after the making of the assessment."[5]

■ Given the relevant statutory framework, and the particular facts of this case, the Court feels that the IRS acted within its statutory limitations concerning the tax lien and levy upon plaintiff's money. On July 6, 1971 the IRS made a jeopardy determination concerning plaintiff's 1969 income tax deficiency, and then levied upon his money while it was in the custody of the U.S. Marshal. The IRS subsequently sent the plaintiff a deficiency notice dated August 18, 1971—well within the 60 day period required by I.R.C. § 6861(b). Treasury Reg. § 301.6861–1(d).

■ The Courts have consistently held that no notice is necessary before levy for the purpose of enforcing a jeopardy assessment of income taxes. United States v. Ball, 326 F.2d 898 (4 Cir. 1964); Cooper Agency v. McLeod, *supra*; Publishers New Press, Inc. v. Moysey, 141 F.Supp. 340 (S.D.N.Y.1956). In Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), the Supreme Court stated that summary administrative proceedings of assessment and levy without notice and hearing do not violate the due process clause of the Constitution so long as an adequate opportunity exists for the taxpayer to administratively and judicially contest the assessment and collection proceedings.

■ Since the plaintiff is being given the opportunity to contest the tax assessment in the Tax Court, and to contest the tax collection procedures in this Court, his Fifth Amendment right to due process of law has not been violated.

### VI

Plaintiff's chief contention in this action is that the jeopardy assessment lien and levy must be suppressed on the grounds that the United States Government cannot legally succeed in any tax collection action or "forfeiture" in which the forfeited money has been illegally seized. In support of this position he cites Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920) and later cases, indicating that since the Government is prohibited from using illegally seized property as evidence in prosecuting criminal proceedings, the Government cannot subversively use it to punish in quasi-criminal forfeiture proceedings.

■ I.R.C. § 7302 deals with forfeitures, but the Court does not believe that forfeiture principles have any relevance at all to deciding this action.[6] Al-

---

5. This short-circuiting of normal procedures is necessary at times for effective tax enforcement. A jeopardy assessment procedure is a technique that enables the IRS to assure the collection of taxes in cases in which it believes the usual methods will be unavailing.

6. § 7302 states that "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property . . .

though the Court does agree that in many instances illegal seizures cannot be used as the basis of valid forfeitures under I.R.C. § 7302, a jeopardy assessment proceeding is quite distinct from a forfeiture proceeding. In the case before the Court, the IRS did not rely upon its forfeiture powers under I.R.C. § 7302 et seq. in gaining possession of the plaintiff's money; rather the IRS relied upon the jeopardy assessment provisions of I.R.C. § 6861 et seq.

By phrasing his argument in "forfeiture" terms the plaintiff needlessly confuses the major substantive issue presented for the Court's consideration. This issue is whether or not the initial illegal seizure of plaintiff's money by U.S. Marshals so "tainted" the subsequent IRS jeopardy assessment lien and levy on the same money, that the tax collection procedure itself violated plaintiff's Fourth Amendment rights.

 █ In light of the Fourth Amendment's prohibition against unreasonable searches and seizures the courts have developed certain exclusionary rules of evidence. The exclusionary rules direct that evidence illegally seized is inadmissible in both criminal and quasi-criminal proceedings, and that any collateral evidence discovered as a direct or indirect result of the illegally seized evidence is also inadmissible. One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L. Ed. 652 (1914). Yet the Supreme Court

has never held that the exclusionary rules totally insulate illegally seized property from any and all types of lawful Government claims. Field v. United States, 263 F.2d 758 (5 Cir. 1959), cert. denied, 360 U.S. 918, 79 S.Ct. 1436, 3 L. Ed.2d 1534 (1959). For instance, in some instances the Government is allowed and required by statute to condemn, forfeit or destroy certain contraband and deleterious property in its possession regardless of the manner in which it was seized. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L. Ed. 59 (1951); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948).

The critical issue now before the Court is whether the IRS may lawfully collect unpaid taxes by placing a lien and levy upon illegally seized property retained in Government custody.

In Welsh v. United States, 95 U.S. App.D.C. 93, 220 F.2d 200, 202 (1955), the Court of Appeals for the District of Columbia faced the question of whether the accused in a criminal case was entitled to the return of money illegally seized from him by the police of the District of Columbia, after the United States claimed that the money was subject to a lien for taxes. The Court concluded that the plain meaning of the relevant statutory provisions allows liens to attach to money belonging to a taxpayer in whatever hands it might be, and that property in the possession of the police is not excepted from such a tax lien: [7]

. . . But here the money has been declared illegally seized and has been suppressed as evidence. To sub-

---

Nothing in this section shall in any manner limit or effect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws.

7. I.R.C. § 6331 provides that failure to pay a Federal tax authorizes a levy "upon all property and rights to property . . . belonging to such person or on which there is a lien. . . . "

I.R.C. § 6334(c) provides that "no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." [The list of exemptions does not include money in the hands of the police].

I.R.C. § 6332 insures that a tax levy reaches "all such property whether in

ject it to a tax lien does not result in using the money as evidence in any proceeding, criminal or civil. The money is being held as security for an asserted tax debt—not arising out of the illegal seizure or, so far as appears, out of information gained from the seized money—pending determination of the debt and lien in an appropriate proceeding.

The Court in *Welsh* further noted that it saw no Fourth Amendment violation if the return of the appellant's money was delayed or prevented entirely by the recognition of a statutorily valid and Congressionally recognized tax lien.

Field v. United States, *supra,* once again raised the question of whether money seized in violation of the requirements of the Fourth Amendment during the enforcement of criminal laws remains insulated from statutory proceedings for the assessment and collection of Federal taxes. Concurring with the opinion in *Welsh,* the Fifth Circuit made the following comment:

The citizen owes his tax to the sovereign. The citizen's property may be seized by levy to satisfy that tax. As long as it is his property, unencumbered by a lien having tax priority, the levy follows the property into the hands of whomsoever it might fall. Property stolen from the taxpayer would be liable to levy in the thief's hands. Here, had the cash been surrendered to Field pursuant to the initial suppression order the moment it was put back into Field's hand it would have been subject to immediate levy. Id., 263 F.2d at 763.

In Simpson v. Thomas, 271 F.2d 450, 452 (4 Cir. 1959), the plaintiffs' argued that money taken from them incident to a lawful arrest, and held by the U.S. Marshal for safekeeping, could not be subjected to a federal tax lien and was immune from levy by the United States while in the hands of the Marshal. The

Fourth Circuit rejected this contention, stating that I.R.C. § 6321 provides no specific tax lien exemption of the property of a federal prisoner held for him by a U.S. Marshal or by others:

When a tax lien attaches to property, the United States becomes in a sense a co-owner with the taxpayer of the property to the extent of the lien. The taxpayer then ceases to have an unconditional right to obtain or retain possession of the property. The substantive rights of the United States and of the taxpayer are in no sense dependent upon the nature of the immediate custody of the property or the identity of the custodian. If it appeared that money in the possession of a marshal had been stolen, no good reason appears why the law should require its return to the thief upon his discharge from custody. Nor do we see any reason why the United States Marshal may not recognize the United States as the owner of an interest in property in his custody.

Pizzarello v. United States, 285 F. Supp. 147 (S.D.N.Y.1968), reversed on other grounds, 408 F.2d 579 (2 Cir.), cert. denied, 396 U.S. 986, 90 S.Ct. 481, 24 L.Ed.2d 450 (1969), involved an action to enjoin the levy of a jeopardy assessment for unpaid wagering taxes on money illegally seized by the United States. One of the issues presented before the District Court was whether because the mere existence of the money was discovered by an illegal seizure, there could be no levy on the property under a jeopardy assessment. Citing *Field,* the District Court judge held that the levy was valid.

When the case reached the Second Circuit the lower Court's position on the jeopardy assessment levy issue was upheld, but the case was reversed and remanded on other grounds. The facts of *Pizzarello* clearly showed the the IRS had computed Pizzarello's tax liability

---

possession of the owner or in the possession of third parties or agencies. . . . " These third parties or agencies are obliged under civil sanctions to hold

and surrender it to the Collector pursuant to the levy.

I.R.C. § 6343 provides that money is property subject to levy.

from records and betting slips illegally seized during a search of Pizzarello's premises. After examining the liberal development of the exclusionary rules, the Circuit Court concluded that because Pizzarello's tax assessment had been based in substantial part, if not completely, on illegally procured evidence, the assessment itself was invalid. The Court remanded the case for a complete hearing on just what alleged economic damages Pizzarello might suffer if collection of the tax deficiency were not enjoined, and ordered that Pizzarello's money remain in the custody of the U.S. Marshal pending the entry of final judgment and all appeals.

 This Court views the Second Circuit's decision in Pizzarello extending the scope of the exclusionary rules in relation to federal tax matters as limited in its ramifications. *Pizzarello* holds only that a tax assessment is invalid if illegally seized evidence is substantially used to compute the assessment.

## VII

 This Court does not feel that plaintiff's suit differs significantly from the above discussed cases, and consequently the Court finds no Fourth Amendment violation of plaintiff's rights.

The record before the Court does not show that the IRS computed the 1969 tax deficiency assessment on the basis of illegally seized evidence, which would invalidate the jeopardy assessment lien and levy under the *Pizzarello* ruling. There is also no indication that the U.S. Marshals who arrested the plaintiff and seized his money acted with the purpose of aiding the IRS, or that the IRS instigated the arrest and illegal search and seizure for the purpose of collecting unpaid taxes. If the record did reflect such a factual situation then it might very well be argued that the "taint" of the initial illegal seizure would encom-

pass and invalidate the subsequent tax lien and levy.

Under the facts of this case, the Court finds that the IRS did not abuse the criminal process in seeking to enforce a civil tax liability against the plaintiff, and that the IRS lawfully proceeded to assess and collect the outstanding tax deficiency under the jeopardy assessment provisions of the Internal Revenue Code.

Having made appropriate findings of fact and law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this Court denies plaintiff's request for summary judgment to suppress the Government tax lien and levy, and renders judgment for the defendant. The case is dismissed without prejudice to plaintiff's continuing his pending refund action in the Tax Court.

Let an appropriate order be submitted.

## SUPPLEMENTAL OPINION

This matter comes before the Court on the motion of the United States to have amended certain findings of law contained in an earlier Opinion rendered in this action on October 31, 1972. See Yannicelli v. Nash, 354 F.Supp. 143 (D. C.N.J.1972). Specifically, the Court is asked to amend its findings with respect to the jurisdiction of the Court pursuant to 28 U.S.C. § 2410(a).[1]

This Court has held that the United States waives its sovereign immunity under § 2410 in a taxpayer's suit which questions the validity of a jeopardy assessment lien and levy [2] in regard to the Government's compliance or noncompliance with statutory and constitutional requirements of due process. The taxpayer-plaintiff in such an action may not, however, collaterally attack the merits of the tax assessment itself.

The United States raises two objections to the Court's ruling: first, that § 2410 can only be invoked by a "third

---

1. 28 U.S.C. § 2410(a) provides that the United States may be named a party in any civil action or suit in any District Court "to quiet title to or to foreclose a mortgage or other lien upon . . . real or personal property on which the United States has or claims a mortgage or other lien."

2. 26 U.S.C. § 6861 et seq.

party" seeking to determine the relative priority of his lien on real or personal property vis-a-vis a federal lien, and may not be used as a jurisdictional vehicle for a taxpayer to seek judicial determination of the validity of a federal tax lien; second, that by allowing a taxpayer to invoke § 2410 in order to challenge the validity of the procedures and methods the Internal Revenue Service (IRS) uses to collect a tax assessment, the action in fact becomes a "bootstrap" attack on the merits of the tax assessment itself.

The Court believes that its earlier interpretation of § 2410 remains an accurate reflection of the relevant case law on the issue.[3]

In Sonitz v. United States, 221 F. Supp. 762 (D.C.N.J.1963), it was held that in a taxpayer's suit brought to quiet title under § 2410 both the procedural defects of a Government tax lien and the merits of the tax assessment underlying the lien were proper issues of inquiry by the district court. The great weight of case law authorities have, however, taken a somewhat more restrictive view of the jurisdictional scope of § 2410, and have held that a taxpayer may not use § 2410 as a means to contest the merits[4] of a tax assessment. Floyd v. United States, 241 F.Supp. 996 (W.D.S. C.1965), aff'd., 361 F.2d 312 (4 Cir. 1966); Cooper v. McLeod, 235 F.Supp. 276 (E.D.S.C.1964), aff'd., 348 F.2d 919 (4 Cir. 1965); Broadwell v. United States, 234 F.Supp. 17 (E.D.N.C.1964), aff'd., 343 F.2d 470 (4 Cir. 1965), cert.

den'd., 382 U.S. 825, 86 S.Ct. 57, 15 L. Ed.2d 70 (1965); Quinn v. Hook, 231 F.Supp. 718 (D.C.Pa.1964), aff'd., 341 F.2d 920 (3 Cir. 1965); Batts v. United States, 228 F.Supp. 272 (E.D.N.C.1964); Falik v. United States, 206 F.Supp. 181 (E.D.N.Y.1962), rev'd., 343 F.2d 38 (2 Cir. 1965); Remis v. United States, 172 F.Supp. 732 (D.Mass.1959), aff'd., 273 F.2d 293 (1 Cir. 1960); Coson v. United States, 169 F.Supp. 671 (S.D.Cal.1958), modified and aff'd., 286 F.2d 453 (9 Cir. 1961).

Yet the above-cited cases do not go so far as to strictly prohibit under any circumstances a taxpayer from invoking § 2410 to contest the validity of a Government tax lien and levy.[5] Under appropriate circumstances a taxpayer may clearly invoke § 2410 as an available jurisdictional base upon which to specifically challenge the validity of the particular Government procedures and methods used to collect a tax assessment from the taxpayer.[6]

Contrary to the Government's argument, by permitting a taxpayer to invoke § 2410 to challenge the validity of the way in which the Internal Revenue Service has enforced a tax lien and levy the Court is *not* allowing a "bootstrap" attack on the merits of the tax assessment itself. The Court has clearly stated that in such an action judicial review is appropriately restricted to examining possible violations of a taxpayer's constitutional rights alleged to have occurred during the course of the tax collection proceedings.[7]

---

3. See the Court's earlier discussion in Yannicelli v. Nash, *supra*, at 150–151.

4. The "merits" which the district court may not review in such an action include any issue touching upon the actual extent of the taxpayer's federal tax liability.

5. In Quinn v. Hook, 231 F.Supp. 718, 722 (D.C.Pa.1964) the Court stated that "§ 2410(a) construed in harmony with its purpose consents only to suits to determine the priority *and validity of liens.*" [Emphasis added.]

6. See in particular United States v. Coson, *supra*, holding that a taxpayer may commence an action under § 2410 to quiet title to his property and attack a govern-

men tax lien "from a procedural standpoint." See also Cooper Agency v. McLeod, *supra*, and Batts v. United States, *supra*, where *Coson* was distinguished although its reasoning was not questioned.

7. A federal tax lien and levy might be held irregular, insufficient and invalid for failure by the IRS to comply with statutory procedures, thereby violating the Fifth Amendment's guarantee of due process of law. See United States v. Bonaguro, 294 F.Supp. 750 (E.D.N.Y.1968), aff'd., 428 F.2d 204 (2 Cir. 1969), cert. den'd, 400 U.S. 829, 91 S.Ct. 57, 27 L.Ed.2d 59 (1970); Transport Mfg. and Equipment Co. of Delaware v. Trainor, 382 F.2d 793 (8 Cir. 1967).

158

Lastly, this Court does not feel that its findings of law in regard to § 2410 derogate from a taxpayer's alternative statutory remedies.[8] Nor does the Court feel that its interpretation of § 2410 frustrates the long standing ability of the Government to collect taxes prior to the taxpayer's opportunity for an adjudication of his liability.[9]

The Court hereby reaffirms its initial finding of law that the United States waives its sovereign immunity under § 2410(a) in a taxpayer's suit which questions the validity of a jeopardy assessment lien and levy in regard to the Government's compliance or noncompliance with statutory and constitutional requirements of due process. The taxpayer-plaintiff in such an action may not, however, collaterally attack the merits of the tax assessment itself.

---

In Yannicelli v. Nash, *supra*, the plaintiff-taxpayer relied primarily on the Fourth Amendment's prohibition against unreasonable searches and seizures, and sought to suppress a jeopardy assessment lien and levy for unpaid gambling taxes placed upon money he alleged was illegally seized from his luggage by Federal Marshals and later turned over to the Internal Revenue Service.

8. In most instances the Congressional scheme requires the taxpayer to either petition the Tax Court (26 U.S.C. § 6213, § 6214), or pay the full amount of the tax assessment and then sue for a refund in the district court (26 U.S.C. § 7422). In certain instances a suit may also be brought in the district court to restrain the collection or assessment of a tax if it falls within the judicially created exceptions to 26 U.S.C. § 7421(a). See Miller v. Standard Nut Margarine Co., 284 U.S. 498, 52 S.Ct. 260, 76 L.Ed. 422 (1932); Enochs v. Williams Packing and Navigation Co., 370 U.S. 1, 82 S.Ct. 1125, 8 L. Ed.2d 292 (1962).

9. See the Court's earlier discussion of this issue in Yannicelli v. Nash, *supra*, at 151–152.