Robert E. FIELD, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17319.

United States Court of Appeals Fifth Circuit.

Feb. 19, 1959.

Fred Botts, Miami, Fla., for appellant.

David C. Clark, Jr., O. B. Cline, Jr., Asst. U. S. Attys., Miami, Fla., James L. Guilmartin, U. S. Atty., Miami, Fla., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami Beach, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The question here is whether property seized in violation of the requirements of the Fourth Amendment, during the en-

forcement of criminal laws, is thereby insulated from statutory proceedings for the assessment and collection of Federal taxes. Stated in another way the precise problem is whether, after a final order under Fed.R.Crim.P. 41(e), 18 U.S.C.A. suppressing use of the property as evidence, the Court may decline to order an unconditional surrender and return of the property involved to the owner because, subsequent to the order of suppression but prior to its return, the property is levied on for the collection of assessed taxes. By supplemental decree the District Court ordered that as to this property ($10,000 in cash), it would "permit the retention of said sum pending disposition of the tax claims."

As the order of suppression has long since become final by a subsequent dismissal of the criminal information, cf., Zacarias v. United States, 5 Cir., 1958, 261 F.2d 416, we may properly summarize the facts in their most extreme form.

After several weeks of careful surveillance of an apartment building in Miami, Florida, suspected of being the headquarters of a numbers racket operation, ten officers of the Internal Revenue Service accompanied by the United States Attorney made a raid about 4:30 on a Saturday afternoon. The officers had a search warrant covering the premises. All but one of the party entered the premises, where arrests of others were made and where ample evidence was found of violation of the Federal Wagering Excise Tax Law, 26 U.S.C.A. §§ 4411, 4412, 4901(a) and 7203.

As Field, the appellant here, was suspected of being the principal banker, but had not yet been observed going into the building as was his routine custom at this time each Saturday afternoon, one agent remained outside. He furtively concealed himself behind a tree in the expectation that Field would arrive. He was not disappointed. Shortly, Field came on the scene in his flamingo and charcoal Chevrolet Bel-Aire sedan. When Field, walking toward the building, got within two steps of the front door, the Agent stepped out from his place of hiding, said "Hello" and with drawn pistol pointed toward the ground, not Field, suggested that Field go inside. Once inside, he was arrested and searched or searched and arrested. The main fruit of the search was the $10,000 in cash found on his person.

Field moved under Fed.R.Crim.P. 41 (e), for suppression and return of the property [1] taken from him. This motion was heard after criminal proceedings had been commenced by an information. The Court granted, and on rehearing reaffirmed the grant of the motion. No opinion or formal findings were made by the Judge. But it is plainly evident that the Court concluded that from what the agent knew and could then see about Field, he had no reasonable grounds for his coercive action. Faced by an agent with a gun in his hand, Field's movements into the house were not voluntary. It was, the Court concluded, an arrest accomplished with force, without a warrant, and without probable cause. We take it on that basis.

After the order [2] of December 13, 1957, granting the motion to suppress, the

1. The property was listed in the motion and orders of suppression as:
"1. Cash $10,000.00.
"2. One Four Door Bel-Aire Chevrolet Sedan, Motor Number 0078577–F55F.
"3. One set of Keys for above car.
"4. One small black address book labeled 'Tower of Jewels'.
"5. One business card with writing on reverse side.
"6. Three slips of paper with writing thereon.

"7. One Standard Analysis Bookkeeping Pad No. 4506."

2. It was in sweeping terms:
"[I]t is * * *,
"Ordered and Adjudged that said motion be and the same is hereby granted and all statements made by and all money or property seized and all evidence secured from said Defendant, Robert E. Field, subsequent to his arrest be and the same is hereby suppressed and the same shall never be used at any time in any proceedings, Civil or

Court, pursuant to a separate motion for return of the property, entered a separate order on February 3, 1958, mandatorily requiring that all of the property as listed in note 1, supra, "be returned to \* \* \* Field, said return to be made by whomsoever has the present possession of said property."

But before the property was returned, the Government sought amendment of that order with respect to Item 1, the cash, and Item 2, the Chevrolet, see note 1, supra. As to the cash, it was established without contradiction that on December 13, 1957, the very day of the initial order of supression, note 2, supra, "the person having custody of the \* \* cash was duly served with a Notice of Levy by the Collection Division of the Internal Revenue Service at Miami, Florida, with respect to wagering excise taxes due and owed \* \* \* by \* \* \* Field." [3] This motion was granted as to the cash but denied as to the Chevrolet.[4]

With great tenacity and moving sincerity, the earnest advocate for Field invokes the Fourth Amendment to strike down this result which he thinks highhanded and lawlessness in the name of law. If this can be done in the interest of the sovereign's well-nigh insatiable need for tax revenues, then, he says, tax collectors may arm themselves as vigilantes, descend upon unwary citizens on the public streets, their places of business, and, yea, even as here within the confines of someone's home and there, by pointed and loaded gun, extract what is administratively claimed to be due but tardily unpaid as a Federal tax.

Without a doubt there are disturbing implications in this case. But we do not yet face any of the extremes so readily and dramatically imagined. These we do not decide. For wise reasons, we may not, if we could, be prophets of the Constitution. Commonwealth of Massachusetts v. Mellon, 1923, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078, 1085; Charles River Bridge v. Proprietors of Warren Bridge, 1837, 11 Pet. 420, 36 U.S. 420, 553, 9 L.Ed. 773, 826; 11 Am.Jur., Constitutional Law § 93 (1937). If there is thought to be within this less flagrant case the seeds of those more serious, then we think it cannot yet be said that such an assumed violation of the Fourth Amendment insulates the property from its tax subjugation.

We say it in these terms for Field misapprehends the present state of the law, and if his contention is to succeed it requires that we carry the principles way beyond their present boundaries. Basically, his difficulty is that he fails to heed the distinction so often pointed out between those actions which are held to violate the Fourth Amendment and the sanctions which the Judiciary does, or may, impose.

■ The usual sanction is the exclusion of the ill-gotten fruits as evidence or the means to evidence. But to this day, at least, there is no holding that the Constitution compels this sanction. If one reads and assimilates as a composite whole the significant decisions [5] in this

Criminal involving said defendant, Robert E. Field."

3. Taxes assessed and claimed were in the amount of $45,954.63. It was stated that such Notice of Levy notified "the said holder of the said property that all moneys in his possession and belonging to [Field] were thereby levied upon and seized for satisfaction of the aforesaid tax."

4. The Court in its amended order, March 23, 1958, treated the cash as having been "\* \* \* properly levied upon by Collection Officers of Internal Revenue Service by levy upon Special Agents of the Intelligence Unit having custody of said $10,000.00 \* \* \*" so that the prior return order of February 3, 1958 should "be amended to permit the retention of said sum pending the disposition of the tax claims."

5. Benanti v. United States, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126; Rea v. United States, 1956, 350 U.S. 214, 76 S. Ct. 292, 100 L.Ed. 233; Irvine v. California, 1954, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561; On Lee v. United States, 1952, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270; Rochin v. California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183;

area, some rather certain principles can be drawn. The Fourth Amendment applies, of course, directly to proceedings in the Federal Courts. The Fourteenth Amendment embraces the concept of the Fourth Amendment, so its commands lay on the states as well. Notwithstanding this, the states are not compelled to apply the same sanctions as would the Federal Courts in testing a Federal prosecution. This is so in part because the sanction of exclusion of evidence is not one self-generated by the Fourth Amendment. It is rather, the means fashioned by the Judiciary as one thought to be most effective in carrying out the evident demands and policy reflected by the Fourth Amendment. The Weeks Rule of Exclusion " * * * was not derived from the explicit requirements of the Fourth Amendment; it was not based on legislation expressing Congressional policy in the enforcement of the Constitution. The decision was a matter of judicial implication. * * * And though we have interpreted the Fourth Amendment to forbid the admission of such evidence,

a different question would be presented if Congress under its legislative powers were to pass a statute purporting to negate the Weeks doctrine."[6] Wolf v. Colorado, 1949, 338 U.S. 25, 28, 33, 69 S.Ct. 1359, 1361, 1364, 93 L.Ed. 1782, 1786, 1788. The Judge made genesis [7] of the exclusionary rule was reiterated in Irvine v. California, 1954, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561. "Wolf * * * declined to make the subsidiary procedural and evidentiary doctrines developed by the federal courts limitations on the states. * * * Whether to exclude illegally obtained evidence in federal trials is left largely to our discretion, for admissibility of evidence is governed 'by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.' Fed.Rules Crim.Proc., [rule] 26." 347 U.S. at pages 132, 134–35, 74 S.Ct. at pages 383, 384, 98 L.Ed. at pages 569, 570.

Indeed, the Court by a recent unanimous pronouncement [8] recognizes that

Lustig v. United States, 1949, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819; Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.

6. This was highlighted by Mr. Justice Black's concurrence: "But I agree with what appears to be a plain implication of the Court's opinion that the federal exclusionary rule is not a command of the Fourth Amendment but is a judicially created rule of evidence which Congress might negate. See McNabb v. United States, 318 U.S. 332 [63 S.Ct. 608, 87 L.Ed. 819]." 338 U.S. at pages 39–40, 69 S.Ct. at page 1367, 93 L.Ed. at page 1792.

7. The Court stated, On Lee v. United States, 1952, 343 U.S. 747, 755, 72 S.Ct. 967, 972, 96 L.Ed. 1270, 1276, "In order that constitutional or statutory rights may not be undermined, this Court has on occasion evolved or adopted from the practice of other courts exclusionary rules of evidence going beyond the requirements of the constitutional or statutory provision. McNabb v. United

States (U.S.) supra; Weeks v. United States, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652]."

8. In Benanti v. United States, 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126, a Federal Court conviction is invalidated because of evidence obtained by a state officer pursuant to state law but in violation of Section 605 of the Federal Communications Act, 47 U.S.C.A. § 605. The Court expressly declined to rule on the petitioner's contention that the wiretap evidence was excluded by the Fourth Amendment. Its footnote 10 was highly significant: "It has remained an open question in this Court whether evidence obtained solely by state agents in an illegal search may be admissible in federal court despite the Fourth Amendment. See Lustig v. United States, 1949, 338 U.S. 74, 78, 79, 69 S.Ct. 1372, 1373–1374, 93 L.Ed. 1819, [1823]. The instant decision is not concerned with the scope of the Fourth Amendment." 355 U.S. at page 102, 78 S.Ct. at page 158, 2 L.Ed.2d at page 131. See Williams, The Admissibility and Constitutionality of Chemical Intoxication Tests, 35 Texas L.Rev. 813 (1957).

there may be considerable doubt whether this exclusionary sanction extends beyond the Court's asserted supervisory powers over Federal law enforcement agencies as applied in Rea v. United States, 1956, 350 U.S. 214, 76 S.Ct. 292, 100 L.Ed. 233; cf. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

■ We are of the firm view, then, that as thus far construed the Constitution does not itself compel the exclusion of the results of the search for evidence. *A fortiori*, it does not compel the sanction sought here.

Of course, to accept this thesis briefly summarized that the exclusionary sanction is judge-made does not necessarily end the matter. If the Judiciary, to effectuate the policy of the Fourth Amendment, may fashion this means, it could, we think within reason, fabricate others thought suitable or perhaps desirable. That might include the insulation of the fruits of an illicit search against the usual amenabilities of property.

Such an inquiry has two facets: (1) has any such sanction yet been established either expressly or by implication; (2) if not, should it be? So far as a categorical declaration of any such sanction is concerned, the first is easily answered in the negative. What jurisprudence there is is all to the contrary. Welsh v. United States, 1955, 95 U.S.App. D.C. 93, 220 F.2d 200. Nor do we find it in Fed.R.Crim.P. 41 which the Court has held "implements the Fourth Amendment." Jones v. United States, 1958, 357 U.S. 493, 498, 78 S.Ct. 1253, 1257, 2 L.Ed. 2d 1514, 1518.

Rule 41(e) does provide that "the property shall be restored unless otherwise subject to lawful detention." But we do not read this as a determination by the Supreme Court that to the sanction of exclusion it means to add the further one of insulation of property. It was first a recognition that by statute and by prior decision, certain kinds of property, e. g., contraband, deleterious products, etc., were to be condemned, forfeited or destroyed. Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663; United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59. It was further a recognition that there were, or at least might be, other circumstances in which, after the full protection afforded by the Fourth Amendment had been achieved by excluding it as evidence, the property was otherwise subject to some rightful claim of the Government.[9]

With the Court inescapably faced with the undefinable task of determining whether fundamental constitutional concepts have been breached in individual cases, cf. Rochin v. California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183; Irvine v. California, supra; On Lee v. United States, 1952, 343 U.S. 747, 72 S.Ct. 697, 96 L.Ed. 1270, it would have been strange for the Court, through a rule intended primarily to regulate procedure, to have written out all of these troublesome problems by any such mechanical test.

We hold, therefore, that neither by force of the Constitution, its contemporary interpretation, the supervisory sanctions over Federal law enforcement agencies, or the formal Federal Rules of Criminal Procedure, did this property acquire a status that put it over and beyond the law to thus free it of the obligations which it would otherwise have.

■ Once that decision is reached, the problem is reduced here to the simple task of applying the long-enacted tax laws. With an all-inclusiveness and an administrative swiftness that ofttimes

---

9. It is interesting, if not decisive, that in the analysis and counter-analysis of the effectiveness of various sanctions open to one aggrieved by transgressions of the Fourth Amendment on the part of a law enforcing officer, none has discussed the likelihood that the property thereby be-comes freed of its normal obligations. See the majority and dissenting opinions in Wolf v. Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Irvine v. California, 1954, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561.

brings harsh results, the pattern of Federal tax enforcement statutes sweeps all save wearing apparel, school books, $500 worth of fuel, victuals, poultry and livestock and $250 worth of books and tools of the trade under the Collector's levy. Int.Rev.Code of 1954, § 6334(a), 26 U.S.C.A. § 6334(a).

Failure to pay a Federal tax authorizes a levy "upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided * * * for the payment of such tax." § 6331. The exemption itself affirms the all-pervasive reach of the levy. "Notwithstanding any other law of the United States, no property or rights to property shall be exempt from levy other than the property specifically made exempt by subsection (a)." § 6334(c). It reaches all such property whether in possession of the owner or in the possession of third parties or agencies. Under civil sanctions, they are obligated to hold and surrender it to the Collector pursuant to the levy. § 6332. Property levied on, real or personal, is subject to sale, §§ 6335, 6336, 6338, 6339. But provision for sale does not negate the levy on money requiring no sale. For Section 6342 provides that: "Any money realized by proceedings under this subchapter (whether by seizure, by surrender under section 6332, or by sale of seized property) shall be applied * * *" as there set forth. The mechanics of a levy and of a jeopardy assessment and levy are swift and summary. §§ 6862, 6331(a). The remedy of the property owner is by *redemption before or after satisfaction*, § 6337, or by a stay bond. § 6863(a). The taxing authorities' legal discretion in the use of jeopardy assessment and levy is not reviewable. Lloyd v. Patterson, 5 Cir., 1957, 242 F.2d 742. Injunctions are prohibited by Section 7421(a) unless, as not present here, there are truly extraordinary circumstances. United States v. Curd, 5 Cir., 1958, 257 F.2d 347.

This cash was admittedly, or claimed as, property of Field. It came within the statutory definition of property. The tax was duly assessed and the levy made on the one having its possession. The levy is different from the mere lien of Section 6321. For the Collector is authorized "to *collect* such tax * * * by levy upon all property." § 6331 (emphasis supplied). The Federal Court, ancillary to a criminal proceeding then pending or previously terminated, cannot under the guise of effectuating Fed.R.Crim.P. 41 (e), assume a power to adjudicate tax liability either of a taxpayer or of property. Except in the rare case where injunction is permitted, § 7421(a), this power is confined to actions under Sections 7403, 7424 and the traditional suit for tax refund. § 7422.

The citizen owes his tax to the sovereign. The citizen's property may be seized by levy to satisfy that tax. As long as it is his property, unencumbered by a lien having tax priority, the levy follows the property into the hands of whomsoever it might fall. Property stolen from the taxpayer would be liable to levy in the thief's hands. Here, had the cash been surrendered to Field pursuant to the initial suppression order the moment it was put back into Field's hand it would have been subject to immediate levy.

What Field wants then is a credit of $10,000 on his tax which no other citizen can have.[10] The statutes give him no such priority.

The Constitution is his only haven. For obvious reasons, such partiality is not one of those cherished marks of "the concept of ordered liberty." Wolf v. People of State of Colorado, supra, 338

---

10. It should be borne in mind that unlike the abortive attempt to subject the Chevrolet to forfeiture under Section 7325, this levy is in no sense a penalty. It is a means of securing collection of taxes due. Any surplus remaining after full payment of the taxes finally determined is to be returned to Field. § 6342 (b).

U.S. at 27, 69 S.Ct. at 1361, 93 L.Ed. 1785. The Constitution fails him too.

Like any other citizen, whether maltreated or ignored by public officers, Field's fortune must bear to the point of exhaustion his full tax burden.[11] None of it is insulated by these actions from its amenability.

Affirmed.

**11.** Obviously nothing we say has any effect as to the ultimate question of the validity of the tax assessed, the assessment, the levy or the amount of taxes due. The order of suppression, note 2, supra, does, of course, forbid the use of this sum of money, or evidence of it, for any purpose, civil or criminal, in the establishment of such tax or penalties.