David BOYD, Jr.

v.

**UNITED STATES of America and Alfred L. Whinston, District Director of Internal Revenue at Philadelphia, Pennsylvania.**

**Civ. A. No. 73–2406.**

United States District Court,
E. D. Pennsylvania.

July 27, 1977.

Robert M. Taylor, Philadelphia, Pa., for plaintiff.

Thomas M. Lawler, Jr., Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This tax case has had a complicated procedural history. Presently before the Court are motions for summary judgment filed by both the plaintiff and the defendant. Both motions will be denied. Although I agree with the Government's legal position, several factual questions cannot be resolved on the present record, so that summary judgment is inappropriate.

Most of the factual background of the case is not in dispute. On October 29, 1972, the plaintiff's tax year was terminated as of August 25, 1972, pursuant to § 6851 of the Internal Revenue Code, and the Internal Revenue Service ("IRS") made a demand for payment of income taxes in the amount of $13,963.30. An assessment in that amount then was made against the plaintiff. The IRS attempted to collect this liability by levying upon certain cash in the possession of the Philadelphia Police Department ($5,107.00) and seizing plaintiff's automobile, valued at $7,570, from which the IRS realized $5,583.50 after expenses.[1] In addition, in 1973, the plaintiff paid $2000 on the assessment.

Plaintiff then instituted this action, seeking a declaration that the termination as-

1. There is some confusion concerning the value of the assets seized from the plaintiff. In the briefs, both parties repeatedly refer to the figure $12,257 as the amount seized in 1972. Plaintiff alleges that this figure consists of $5,107 in cash and $7,570 as the value of the car. However, combining these figures yields $12,677 rather than $12,257.

sessment was void, an injunction to prevent any further collection, and the return of all property seized pursuant to the termination assessment. While the case was on appeal to the Third Circuit Court of Appeals, the United States Supreme Court decided *Laing v. United States,* 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976). In *Laing,* the Court held that whenever the IRS terminates a taxpayer's taxable year and makes an immediate assessment against him, it must issue a statutory notice of deficiency within sixty (60) days. *Laing* is applicable here. In fact, the Government has conceded that the termination assessment made against the plaintiff was procedurally defective because the IRS did not issue a timely notice of deficiency.[2]

■ Despite this concession, the Government has refused to return the entire amount of the taxes collected from the plaintiff pursuant to the defective termination assessment. The Government contends that a portion of these funds can be credited against the taxpayer's other outstanding tax liabilities under section 6402(a) of the Internal Revenue Code, which provides as follows:

"In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person." 26 U.S.C. § 6402(a).

The crucial issue in this case is whether the funds collected pursuant to the termination assessment should be considered an overpayment, or, as plaintiff contends, simply escrow deposits held in the nature of a cash bond for the payment of any taxes later found due.

I agree with the Government that the funds should be considered overpayments which can be credited against other tax liabilities. See *Harris v. United States,* 76–1 U.S.T.C. ¶ 9403 (E.D.Mich.1976); *United States v. Cooper,* 76–2 U.S.T.C. ¶ 9580 (D.D.C.1976). In *Harris* the court noted that the Supreme Court's decision in *Laing v. United States, supra,* permitting a taxpayer to enjoin collection until a notice of deficiency has been mailed, did not discuss whether a taxpayer is entitled to the return of funds improperly collected. The court then held that the issuance of a proper notice of deficiency mooted the taxpayer's claim for the return of money seized.

"To grant injunctive relief for the return of money collected under an invalid assessment where taxpayer is liable for taxes later validly assessed would be improvident." *Harris v. United States, supra* at 84,050.

In *Cooper,* the court likewise held that property seized pursuant to jeopardy assessment that was procedurally defective only because it violated the Supreme Court's ruling in *Laing* could be applied to other valid tax liabilities as an overpayment.

The cases relied on by the plaintiff are distinguishable. Cases such as *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945) and *Fortugno v. C.I.R.,* 353 F.2d 429 (3d Cir. 1965), *cert. dismissed,* 385 U.S. 954, 87 S.Ct. 337, 17 L.Ed.2d 302 (1966), and other similar cases cited by the plaintiff, arise in an entirely different context. Nearly all of these cases involve claims by taxpayers for interest on sums advanced to the Government. Normally in these cases, unlike the instant case, the taxpayers contend that sums advanced to the Government were payments and not mere deposits, because the Government is required to pay interest on overpayments but not on deposits. None of these cases deals with the issues of funds collected pursuant to a procedurally defective assessment.

More importantly, the principle established in the *Rosenman* line of cases is inapplicable to the present case, where the taxpayer's property was collected after an

---

**2.** Memorandum of the Defendants in Opposition to the Plaintiff's Motion for Summary Judgment, at 6.

assessment was made. In *Rosenman,* the Supreme Court held that funds advanced to the Government before any deficiency was assessed could not be considered a payment, but only a deposit in the nature of a cash bond. In reaching this conclusion, the Court relied in part on the fact that the Government had kept the funds advanced by the taxpayer in special suspense accounts for depositing money when no assessment was outstanding against the taxpayer. In this case, however, the property collected from the plaintiff would not have been received in this manner, since an assessment had been made against the plaintiff. The fact that the original assessment later was found to be procedurally defective cannot change the status of the original collection, which was a payment pursuant to an assessment. See *Jones v. Liberty Glass Company,* 332 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142 (1947). The Supreme Court stated in *Jones* that an overpayment is any payment in excess of that which is properly due. In holding that overpayments can arise from erroneous interpretations of facts or law on the part of taxpayers or revenue officers, the Court explicitly rejected the argument that payments made pursuant to erroneous or illegal assessments cannot be overpayments. *Id.* at 531, 68 S.Ct. 229. Under *Jones,* the property collected from the plaintiff herein must be treated as an overpayment.

The plaintiff also relies on several cases involving property seized pursuant to a jeopardy assessment. Again, however, these cases are not persuasive. Several of the plaintiff's cases do not consider the precise question involved here—whether property seized under a procedurally defective jeopardy assessment is an overpayment which can be credited to other outstanding tax liabilities. See, e. g. *United States v. Hall,* 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976); *Campbell v. United States,* 75–2 U.S.T.C. ¶ 9736 (E.D.Mich.1975), aff'd, 532 F.2d 1057 (6th Cir. 1976). *Johnny Baylor v. United States,* 1972–2 U.S.T.C. ¶ 9654 (E.D. N.Y.1976) is inapplicable because the decision in that case was based on the fact that there was no outstanding assessment against the taxpayer, since the asserted deficiency was being litigated in the Tax Court. In *Sandoval v. United States,* 76–1 U.S.T.C. ¶ 9438 (D.Ariz.1976), the court's refusal to certify a class actually supports the defendant's position in this case, since that refusal was based in part on the possibility that the Government might claim offsets against individual taxpayer's refunds, just as it is doing here.

One case does seem to support the plaintiff's position. In *Kabbaby v. Richardson,* 520 F.2d 334 (5th Cir. 1975), the Fifth Circuit held that property seized pursuant to an "excessive, arbitrary and capricious" assessment "without factual foundation" could not be considered an overpayment which could be credited toward other outstanding tax liabilities. This decision ignores the cases discussed previously in this Memorandum, particularly *Jones v. Liberty Glass Company, supra,* as well as other cases which have held that even property unlawfully seized may be applied to an outstanding tax liability by the Government. See, e. g., *Field v. United States,* 263 F.2d 758 (5th Cir.) *cert. denied,* 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959); *Yannicelli v. Nash,* 354 F.Supp. 143, 153–56 (D.N.J. 1973). However, even if *Kabbaby* is accepted as a correct statement of the law, it is not controlling here. The seizure in this case was invalid only because no deficiency notice was sent as required by *Laing.* This procedural error is not sufficient to render the seizure arbitrary and capricious, and without factual foundation. See *United States v. Cooper, supra.* Moreover, the underlying factual foundation of the assessment is buttressed by the taxpayer's own recognition of a substantial deficiency for 1971. Under these circumstances, this Court holds that the decisions in *United States v. Cooper, supra* and *Harris v. United States, supra,* should be followed, and the Government will be permitted to credit the funds previously collected against any other properly assessed tax liability of the plaintiff.

Plaintiff's counsel has raised an additional ground for preventing the Government

from crediting the funds in question to the outstanding tax liability of the plaintiff. Plaintiff's counsel argues that he has a perfected attorney's charging lien on the property seized from the plaintiff, and that his lien is prior to any claim the Government has on that property. This argument must be rejected. Section 6323(b)(8) of the Internal Revenue Code generally does recognize attorneys' liens, but it also provides a specific exception applicable in this case:

". . . this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment of amount against any liability of the taxpayer to the United States." 26 U.S.C. § 6323(b)(8).

Under this section, the Government's right to credit any part of a judgment against an outstanding tax liability always has priority over an attorney's lien. Thus, in the instant case, the existence of an attorneys' charging lien in favor of plaintiff's counsel does not prevent the Government from retaining an appropriate portion of the funds in question as a credit against the plaintiff's outstanding tax liability.

■ Thus, the only remaining issue is the amount and validity of any outstanding assessment against the plaintiff. The Government has submitted affidavit evidence showing that a tax assessment in the amount of $12,125.19 (taxes, penalties and interest), was made against the plaintiff for the year 1971 on November 15, 1976. This assessment was based on a settlement of plaintiff's Tax Court litigation, in which plaintiff and the Government stipulated to a deficiency of $8,979 in taxes and $448.95 in penalties for 1971, and no deficiency for 1972. Since the Tax Court decision was entered on October 15, 1976, the assessment on November 15, 1976 was timely, as it was within 60 days of the Tax Court's decision.

However, the plaintiff has challenged the validity of the assessment on that date, and his challenge has raised an issue of fact which prevents the granting of the defendant's summary judgment motion. To be valid, an assessment must be signed by the designated assessment officer, and the date of the assessment is the date of the signing. See *Brafman v. United States,* 384 F.2d 863 (5th Cir. 1967). There is no evidence in the record to show that an assessment was properly signed on November 15, 1976. Consequently, the defendant's summary judgment motion cannot be granted.

Several other factual matters also are not clear from the record. One is the value of the assets seized from the plaintiff. (See footnote 1, *supra*). Another is the status of the $2000 payment made by the plaintiff in 1973, which is ignored in the Government's briefs, although it also would be an overpayment of taxes. A third area of confusion concerns the amounts of interest to which each side is entitled. I believe that all of these factual disputes should be able to be resolved through stipulation, since only easily verifiable facts are involved. However, in the event that counsel are unable to so stipulate, an evidentiary hearing will be scheduled, after which judgment will be entered in accordance with the law set forth in this Memorandum.