UNITED STATES of America

v.

Edwin Dollar McWILLIAMS,
Defendant.

Crim. No. 89–95–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 15, 1990.

John L. Lynch, Macon, Ga., for plaintiff.

Floyd M. Buford, Jr., Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

Before the court is defendant's motion to suppress and for return of seized money discovered and seized as the result of a search of his residence by Bureau of Alcohol, Tobacco, and Firearms ("ATF") agents. A hearing was held on this matter on August 24, 1990. The court, having considered the evidence presented at the hearing, the briefs filed by the parties, the arguments contained therein and the relevant case law, now issues the following order.

## FACTUAL BACKGROUND

On December 12, 1989, ATF agents executed a search of defendant's residence located at 3823 Dorothy Drive, Macon, Georgia. The search warrant described the objects of the search to be firearms, ammunition and records of firearms purchases. Defendant was present at his home when the search was initiated and was subsequently arrested when firearms were discovered. After defendant was taken into custody, a floor safe in a small building elsewhere on defendant's property was opened by ATF agents. Concealed within the safe, ATF agents discovered $116,400.00 in United States currency. The agents confiscated the currency and placed it in a bank safety deposit box.

At the time of the search, defendant's federal tax liability was $132,511.56. A federal tax lien was on file in Bibb County, Macon, Georgia. The ATF agents contact-

ed the Internal Revenue Service ("IRS") and informed them that defendant's currency had been seized. The IRS requested that ATF agents hold the currency in order that the IRS might levy upon it. On December 14, 1989, the IRS notified defendant that it was levying against the currency confiscated by the ATF agents. IRS agents took possession of the currency from ATF agents on December 18, 1989.

On August 20, 1990, defendant, after having been advised of his constitutional rights and having had the charges read to him, withdrew his original plea of not guilty and entered a plea of guilty to the charge of being a convicted felon knowingly possessing a firearm which had previously been shipped in interstate commerce in violation of Title 18, U.S.C.A. § 922(g)(1), in connection with Title 18, U.S.C.A. § 924(a). The court accepted defendant's plea and on November 9, 1990, sentenced him to the custody of the Attorney General for a period of fifteen (15) months.

## DISCUSSION

Defendant moves this court to order the return of the currency obtained, he argues, not pursuant to the search warrant but illegally. The government argues that the evidence should by no means be returned to defendant. The court addresses defendant's motion by treating the following positions taken by the government:

(1) Defendant's motion is moot;

(2) The original seizure of currency was legal and proper; and

(3) Regardless of the legality of the original seizure, seizure of the currency by the IRS was proper.

*Whether Defendant's Motion is Moot;*

■ The government briefly argues that defendant's motion is moot. Had this case proceeded to trial, the government had no intention of using this currency during the trial of the federal firearms charges. The government unabashedly states: "[t]he currency is simply not relevant to any issue in this case." Since defendant has pled guilty, the government argues, his motion is moot. The government cites no case in support of this naked proposition, and this court is unable to find any case law lending even minimal credence to it. Where an issue as to the propriety of the government's actions in surrendering seized property to another government agency survives, a live controversy remains and does not call upon the court to render an advisory opinion. *United States v. Francis*, 646 F.2d 251 (6th Cir.), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981); *DeFunis v. Odegaard*, 416 U.S. 312, 317–320, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

This court finds no merit in the government's contention that defendant's motion is moot simply because the government did not intend to use the currency against defendant had a trial been necessary.

*Propriety of the Original Seizure of the Currency Was Legal and Proper*

■ Ironically, after arguing that the currency was in no way relevant to the case against defendant, the government quickly shifts its argument to the proposition that the currency was legally seized during the course of the execution of the search warrant—a warrant issued to uncover evidence to support the very offense to which the currency, in the government's words, "is simply not relevant."

The government attempts to justify the original seizure of the currency by cloaking themselves in the "plain view" doctrine. Indeed, the government properly paraphrases the current status of the doctrine as allowing for the seizure of items of an incriminating character which are discovered during the course of the execution of a search warrant, even when those items are not described in the underlying warrant. *Horton v. California*, 495 U.S. ——, 110 S.Ct. 2301, 2307, 110 L.Ed.2d 112, 121. Under certain circumstances such items will survive a defendant's motion to suppress.

However, as the very case which the government cites emphasizes, "it is important to keep in mind that in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the

moment of seizure." [1] *Id.,* (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 465–466, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)) (emphasis the Court's). In *Horton,* the Court also set out the surviving restraints on the "plain view" doctrine. Items obtained under these circumstances are properly seized only if:

(1) the law enforcement officer has a right to be where he or she is at the time;

(2) she or he is looking into places likely to contain the property he seeks; and

(3) the item seized is immediately recognizable as incriminating in character. *Id.,* 495 U.S. at ——, 110 S.Ct. at 2308, 110 L.Ed.2d at 123.

In the present case neither the court nor defendant take issue with the government's arguments that the ATF agents had a right to be on the premises and were looking into a place which might have contained weapons, ammunition and/or records. However, defendant argues, the currency was not an item whose incriminating character is immediately apparent. Defendant urges that the currency cannot be described as incriminating at all because the government has failed to establish a nexus between the currency and any alleged criminal activity on defendant's part.

Were this the only issue to decide, the court would order the immediate return of the currency to defendant. The record is absolutely devoid of evidence linking this currency to any criminal activity. This money was, in and of itself, no more incriminating than the very safe in which it was found. To say that the seizure of this money was without probable cause or legal justification would be a tremendous understatement. In fact, it is not disputed that the ATF agents executing the search seized the money based not upon a belief that it was the fruit of *criminal* activity, but based upon their knowledge of the IRS's outstanding *civil* lien against defendant's property.

Cases cited by the government have upheld searches where the discovered items were of an immediately recognizable criminal nature. The items in question before this court most certainly do not fit that description. The government would have the court adopt a test upholding seizure of any property so long as the items were of some remotely imaginable importance to some body of the government, even if that importance related to a matter of civil liability.

The grant of a search warrant is not an invitation to the obtaining body to settle all matters between the subject of the search and all other government bodies. The ATF agents in the present case grossly exceeded the authority granted them to search for weapons and related materials. The "plain view" doctrine developed as an exception to the general rule calling for proper description of the items subject to search. The government's version of this doctrine would amount to a total abdication of Fourth Amendment protection of citizens' right to be secure in their persons, houses, effects, etc., against unreasonable, overreaching searches. *See generally Coolidge,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.

The court strongly disagrees with the government's arguments and finds that the currency was not properly seized pursuant to the search warrant and under the "plain view" doctrine.

*Regardless of the Legality of the Original Seizure, Whether Turning the Currency Over to the IRS Was Proper.*

■ The court now turns to the government's argument that, putting the legality of the original seizure of the currency aside, the IRS levy was proper and is not subject to defendant's motion for return of property. There is something inherently inequitable and unsettling in the sound of this very proposition. However, the government cites cases from other circuits, as well as Fifth Circuit case law binding on this court, that suggest that an IRS levy upon illegally seized property survives re-

---

**1.** Witness the case *sub judice* where the seized currency came into "plain view" only after the ATF agents entered another building, discovered a floor safe, obtained the combination, opened the safe, and inspected the contents concealed inside.

gardless of gross and flagrant violations of a defendant's Fourth Amendment right to live free from illegal seizure of his or her property.

Particularly important to this court is the case of *Field v. United States*, 263 F.2d 758 (5th Cir.), *cert. denied*, 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959).[2] In *Field*, the court, proceeding under the old Rule 41(e), emphasized and relied heavily upon the rule's specific language that "the property shall be restored **unless otherwise subject to lawful detention**." *Id.*, at 762 (emphasis added). Based on this language the court ruled that the sanction of exclusion of illegally seized items from criminal proceedings was not accompanied by the further one of protection of the property from government levy. In essence, as the government in the case *sub judice* appears to suggest, the protection provided against illegal seizure of property does not insulate illegally seized items from other lawful detention: here an IRS levy.

This court notes that Fed.R.Crim.P. 41 was revised and the language so crucial to the *Field* court was omitted from the version of Rule 41. The Eleventh Circuit has not addressed the propriety of an IRS levy upon illegally seized property since Rule 41(e) was revised. However, the effect of the language employed by Congress in 1972 has been subject in other circuits to the same interpretation as actions under the old rule. *See Francis*, 646 F.2d at 263, n. 8 (case involved levy by the State of Michigan, but court noted that same principles applied as in IRS levy).

The *Francis* court discounted the fact that the "unless otherwise subject to lawful detention" language had been deleted from the statute and relied upon the 1979 Advisory Committee Notes which, according to the court, demonstrated that the

1972 amendment was not intended to affect the validity of case precedent for the proposition that the government may levy on illegally seized property. The *Francis* court termed the change in statutory language merely "incidental to the amendment," and emphasized the language added to Rule 41(e) in 1972:

> Any person aggrieved by an unlawful search and seizure ... may move the district court ... for the return on the ground that he is **entitled to lawful possession of the property** which was illegally seized (emphasis added).[3]

The *Francis* court did not take issue as to *ownership* of the money. The court relied, not upon notions of actual ownership of the money by the levying agency, but instead emphasized the practical consequences of their decision. Most persuasive to the court was language from previous courts suggesting that:

> Even if the money were returned to [defendant], nothing would prevent the government from immediately levying on it at the time of its return. *Id.* (*citing Cancino v. United States* [196 Ct.Cl. 568], 451 F.2d 1028, 1033 (U.S.Ct.Cl. 1971)) (As a practical matter, even if the money were returned ... nothing would prevent the service from again levying on this same money at the time of its delivery), *cert. denied*, 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972).[4]

Congress appears to have been concerned with processes such as those followed by ATF agents in the case *sub judice*. The Advisory Committee Notes to the 1989 Amendment do not appear to echo the *Francis* court's interpretation of the effect of the 1972 Amendment. Specifically, the Committee noted:

> If the United States has a need for the property in an investigation or prosecution, its retention of the property is gen-

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*) the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** In 1989, 41(e) was again amended and the words "which was illegally seized" were omit-

ted. The language was deleted to insure that persons could seek return of their property even if the original seizure was legal. 1989 Advisory Committee Notes ¶ 1.

**4.** This court notes that *Cancino*, like *Field* was decided under the old version of Fed.R.Crim.P. 41(e).

erally reasonable. But, if the United States' legitimate interests can be satisfied **even if the property is returned**, continued retention of the property would become unreasonable. Fed.R. Crim.P. 41(e) Advisory Committee Notes, Para. 2 (emphasis added).

Ironically, the very reason asserted by the government in *Francis*, as in the case before this court, for denying the motion to return the money is the ease with which the government agency will regain possession of the money, *even if the property is returned*. Generally, in just such a situation, apparently contemplated by the Advisory Committee, the government's proper course of action is to return the property and regain possession through the legally sanctioned method.

The *Francis* court's overriding emphasis placed upon practicalities appears to be in step with neither congressional intent nor constitutional principles. This court does not mean to suggest that defendant has acted properly in failing to pay his taxes. However, the language of the Advisory Committee Notes suggests that practicalities should not always be the dispositive issue. Despite practicalities, as a general rule, if legitimate interests can be otherwise satisfied, retention of a citizen's property by the United States is unreasonable. *Id.*

Other courts have voiced concerns with the notion, implicit in decisions such as *Francis*, that because the government agency will eventually acquire possession of the money anyway, the illegality of its original seizure is of no consequence. In *Guerra v. United States*, 645 F.Supp. 775, 781 (C.D.Cal.1986), the court voiced concern over the prospect of the IRS effecting illegal searches and then forcing taxpayers to prove rightful ownership. Other courts posit that the language of the rule should not be taken to mean that property of private citizens can be seized and held in an effort to compel the possessor to prove lawful possession. *U.S. v. One Residence and Attached Garage*, 603 F.2d 1231, 1235 (7th Cir.1979).

However, a comparison of the old and emerging versions of Rule 41(e) as well as the case law suggests that the danger of just such a system of illegal searches, legitimized by practicalities survives despite ostensible Fourth Amendment protection. While the practical consequences of any decision are important to this court, the case before this court presents a situation which is properly determined, not by mere practicalities, but by a determination of to whom a rightful claim to possession of the currency belongs. This court is not persuaded that practicalities are of paramount importance when constitutional rights are at stake.

The court finds more persuasive the general principle that agencies such as the IRS "may validly levy on money owned by defendant that is in the possession of the government." *Francis*, at 263. This principle exists in isolation from any analysis of the means by which the money came into the government's possession. Indeed, under the facts presented to this court, the IRS held a legitimate possessory interest in the currency; pursuant to that interest, the IRS levied upon money which was brought to its attention by the ATF agents.

Admittedly, this analysis of legitimate possessory interests may, as a practical matter, yield the same outcome. However, such a result does not leave government agents totally undeterred from making illegal seizures.[5] This court stares askance at the practice of seizing money without cause then searching for a government agency with a claim to such money.

This court cannot, merely because the practical results would be unchanged, sanction the actions taken by the ATF agents in this case. Nothing in the court's finding that the IRS levy was permissible under

---

**5.** The court expresses no opinion as to the arguable availability of a civil remedy for the ATF agents' overly intrusive search and seizure.

the circumstances should be read as an invitation to law enforcement officials to search mindless of the Constitution and subject only to practical obstacles. Nonetheless, the court finds that the IRS is rightfully entitled to possession of the currency in question in the case *sub judice*.

Accordingly, defendants motion for return of property is hereby DENIED.

SO ORDERED.