**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-3723

_____

UNITED STATES OF AMERICA

v.

RODNEY LAW,
                                        Appellant

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 08-cr-00077-001)
District Judge:  Honorable Jan E. Dubois

_____

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2010

_____

Before: BARRY, ROTH, Circuit Judges and HAYDEN,[*] District Judge

(Opinion Filed: June 11, 2010)

_____

OPINION

_____

_____

[*] Honorable Katharine S. Hayden, United States District Judge for the District of New
Jersey, sitting by designation.

BARRY, Circuit Judge

Rodney Law challenges the District Court's denial of his motion to suppress, his conviction, and his sentence. We will affirm.

**I.**

Because we write solely for the parties, we will discuss only the facts relevant to our analysis.

At approximately 1 a.m. on June 21, 2004, Philadelphia police officers George Bobe and Marvin Wilkins arrived at an apartment following a radio call concerning a "disturbance" involving "a person with a gun." (SA14.) Outside the apartment, the officers heard "a little noise like a little argument." (*Id.*) On entering the apartment, both Law and his girlfriend, Tyeisha Falligan, stated that everything was fine, though Falligan appeared upset. Falligan stated that she wanted her jewelry back, which was in a travel bag that Law held. Law handed the bag to Bobe who handed it to Falligan.

Wilkins escorted Law to the kitchen, while Bobe accompanied Falligan to the bedroom. Falligan placed the bag partially inside an open closet. Bobe pointed his flashlight towards the open bag and saw two five-inch stacks of cash "stacked in rubber-bands, not bent, not folded." (SA27.) Bobe then opened the bag further and "saw even more money," at which point Falligan began to sob. (*Id.*)

Bobe took the bag to the kitchen, but found that Wilkins and Law had left the apartment. Bobe carried the bag downstairs to the street where he confronted Law with

the bag. Law reacted violently, punching Bobe and fleeing on foot.

An inventory of the bag at the precinct revealed: 31.18 grams of crack cocaine; 86.57 grams of cocaine powder; over $16,900 cash in various denominations; clear, plastic sandwich bags; a digital scale, an electric mixer, and a pot, all with cocaine residue. A search of the apartment pursuant to a warrant uncovered a plate and a digital scale both with cocaine residue and a loaded gun and ammunition.

Following his indictment, Law filed a motion to suppress the physical evidence. The District Court denied the motion. A jury convicted Law of possession of at least five grams of crack cocaine with intent to distribute and possession of cocaine powder with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C).[1] His presentence report pegged his base offense level at 36. The District Court, however, reduced the offense level to 26 by, among other things, applying a two-level reduction for crimes involving crack cocaine. *See* U.S.S.G. § 2D1.1., Application Note 10(D)(I). Law's advisory Guidelines range was 110-137 months imprisonment. The Court sentenced him to 130 months. At the conclusion of sentencing, defense counsel stated that the Court was "immensely fair" and that Law "got a tremendous break." (SA331-32.)[2]

---

[1] Law was acquitted of the possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and possession of a gun by a convicted felon, 18 U.S.C. § 922(g)(1).

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.

### A.

"We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and we exercise plenary review over questions of law." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006).

### 1.

The plain view exception permits a warrantless seizure of evidence "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). With respect to an object's incriminating character – the disputed element here – the plain view doctrine is satisfied only where police have probable cause to believe that an object is contraband. *Id.* The District Court concluded that Bobe had probable cause to believe that the cash was incriminating. That conclusion was erroneous.

A large amount of cash, in and of itself, is not *per se* incriminating. This issue was addressed in *United States v. Sokolow*, where the defendant paid $2,100 in cash for two airplane tickets, taking the cash from a roll of twenty dollar bills containing nearly twice that amount. 490 U.S. 1, 8 (1989). Calling the use of cash unusual, the Supreme Court nonetheless noted that it was "not by itself proof of any illegal conduct and is quite consistent with innocent travel." *Id.* at 9; *see United States v. Berenguer*, 562 F.2d 206,

210 (2d Cir. 1977) (billfold containing $3,200 "offered no immediately apparent" inculpatory evidence); *see also United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1506 (11th Cir. 1993) (in forfeiture proceeding, holding that, "[a]bsent some evidence," large sums of money provide "no reasonable basis for believing that the money is substantially linked to" illegal conduct); *United States v. Athehorta*, 729 F. Supp. 248, 253, 259 (E.D.N.Y. 1990) (incriminatory nature of $5,000 wrapped in rubber bands not immediately apparent); *United States v. McWilliams*, 751 F. Supp. 988, 988 (M.D. Ga. 1990) (seizure of over $116,000 cash improper under plain view doctrine where "record is absolutely devoid of evidence" linking cash to criminal activity).

The Seventh Circuit crystallized the issue in *United States v. Cervantes*, writing: "although a wad of cash is not in itself a suspicious object, a wad of cash in the hands of a person who the police have good reason to believe just received it in exchange for a delivery of illegal drugs is suspicious and indeed enough so to give the police probable cause to believe it evidence of criminal activity." 19 F.3d 1151, 1153 (7th Cir. 1994).

The incriminating character of the money viewed by Bobe was not immediately apparent. Although the circumstances here may well have given rise to a reasonable suspicion that criminal activity was afoot,[3] *see infra*, they did not give rise to probable

---

[3] *See United States v. Chhien*, 266 F.3d 1, 8-9 (1st Cir. 2001) (in concluding that $2,000 "justified a brief period of additional questioning," observing that "possession of a large, unexplained sum of cash [may] support reasonable suspicion"); *United States v. Howard*, 210 F. Supp. 2d 503, 516 n.11 (D. Del. 2002) (noting, in *dicta*, that possession of $5,000 may warrant finding of reasonable suspicion)

cause – the requisite amount of suspicion for a seizure under the plain view exception to the warrant requirement. When Bobe saw the cash, he did not peer further into the bag, much less see drugs or contraband, and there was no indication of drug activity or, for that matter, any other criminal activity. Moreover, other than Bobe's statement that the money was "a little odd" (SA20), there was no testimony that Bobe thought the cash was incriminating or had anything to do with drugs.

This is not to say that large amounts of cash may *never* be inherently incriminating. The incriminating nature of a large amount of cash *may* be immediately apparent – thus giving rise to probable cause – where the totality of the circumstances provides some indication that the cash is contraband. Here, those additional circumstances were lacking.

**2.**

In the alternative, the District Court found that Bobe's temporary possession and brief confrontation of Law with the bag was a proper investigatory detention. We agree.[4]

In *United States v. Place*, the Supreme Court sanctioned the warrantless seizure of luggage on reasonable suspicion "for the purpose of pursuing a limited course of investigation" to "quickly confirm or dispel the authorities' suspicion." 462 U.S. 696, 702 (1983). Thus, reasonable suspicion is all that is required for police to further inquire about a detained packaged and/or conduct a limited course of investigation. *United States v. Frost*, 999 F.2d 737, 740-41 (3d Cir. 1993).

---

[4] On appeal, Law does not challenge the District Court's alternative rationale.

Here, the totality of the circumstances, which included a police radio report of an armed individual, a heated dispute over Falligan's jewelry, Falligan's placement of the bag on the threshold of a closet, and the large sums of cash, created reasonable suspicion permitting Bobe to temporarily detain the bag and ask Law follow-up questions regarding its contents. That brief inquiry, which prompted Law to punch Bobe and flee, led to a later inventory search at the precinct, a search Law does not and, indeed, cannot challenge. Accordingly, the District Court properly denied Law's motion to suppress.

**3.**

Law further contends that Bobe's use of a flashlight to illuminate the contents of the bag violated the Fourth Amendment. This argument is without merit.

In *United States v. Rickus*, in the context of a nighttime automobile search, we concluded that "the use of a flashlight to aid the officer's vision did not transform the observations justified under the 'plain view doctrine' into an illegal search." 737 F.2d 360, 366 n.3 (3d Cir. 1984). Similarly, here, there is nothing unreasonable about a police officer's use of a flashlight, a commonplace piece of police equipment, to better illuminate the threshold of a closet. A flashlight merely enhances an officer's vision; it does not expand its scope. *See State v. Hite*, 642 So.2d 55, 56 (Fla. Dist. Ct. App. 1994) ("[U]se of the flashlight to illuminate the partially open closet area does not constitute a search or violate any constitutional principles.").

**B.**

Law also challenges the sufficiency of the evidence supporting his conviction. We exercise plenary review. *United States v. Bornman*, 559 F.3d 150, 152 (3d Cir. 2009). We credit all inferences in favor of the government. *United States v. Sparrow*, 371 F.3d 851, 852 (3d Cir. 2004). We must affirm the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (quotation omitted).

Law argues that the government failed to prove that he actually or constructively possessed the seized cocaine. However, crediting Falligan's testimony, the evidence indicates that Law lived in the apartment, brought the bag into the apartment, exercised control over the bag, and, when confronted with the bag, struck Bobe and fled, evidencing consciousness of guilt. Given Law's "extremely high" burden, *United States v. Lore*, 430 F.3d 190, 203 (3d Cir. 2005), his challenge to the sufficiency of the evidence fails.

Moreover, because he failed to raise the argument in the District Court, we also reject Law's claim that he is entitled to a new trial because the verdict was against the great weight of the evidence. *United States v. Grubbs*, 506 F.3d 434, 443 (3d Cir. 2007).

**C.**

Finally, Law contends that "[t]he sentence imposed was unreasonable because it did not take into consideration the unconscionable 100:1 ratio between cocaine and crack

when it comes to determining offense level." (Law Br. at 31.) There is nothing before us, however, indicating that the District Court did not know that it could, in its discretion, vary downward based on the crack/cocaine disparity. Indeed, the Court's application of the two-level reduction in the base offense level for crimes involving crack cocaine not only accounted for the crack/cocaine disparity, but was an implicit acknowledgement and acceptance of Law's contention. His sentence was not unreasonable.

## III.

For the foregoing reasons, we will affirm the judgment of sentence.